# EXHIBIT A

*24-000047377*

CHIEF FINANCIAL OFFICER
**JIMMY PATRONIS**
STATE OF FLORIDA

| | |
|---|---|
| PEDRO E. RODRIGUEZ & MARIOSKA SANCHEZ CO-TRUSTEES FOR THE RODRIGUEZ & SANCHEZ FAMILY TRUST | **CASE #:**    **24-CA-000990** |
| | **COURT:**    **20TH JUDICIAL CIRCUIT** |
| PLAINTIFF(S) | **COUNTY:**    **LEE** |
| | **DFS-SOP #:** 24-000047377 |
| VS. | |
| GENERAL STAR INDEMNITY COMPANY | |
| DEFENDANT(S) | |
| _____/ | |
| SUMMONS, COMPLAINT, DISCOVERY | |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, February 7, 2024 and a copy was forwarded by ELECTRONIC DELIVERY on Thursday, February 8, 2024 to the designated agent for the named entity as shown below.

        GENERAL STAR INDEMNITY COMPANY
        MICHELLE M. COLANTUONO
        1 NORTH WACKER DR, STE 1760
        CHICAGO, IL 60606

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

CARLOS SANTI
PROPERTY & CASUALTY LAW GROUP
2307 DOUGLAS ROAD
SUITE 302
MIAMI, FL 33145

DG1

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.:    24-CA-000990

Pedro E. Rodriguez & Marioska Sanchez Co-Trustees for the Rodriguez & Sanchez Family Trust and ,

Plaintiffs,

v.

General Star Indemnity Company,

Defendant.

TO STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

> **General Star Indemnity Company**
> **c/o The Florida Chief Financial Officer as RA**
> **200 E. Gaines Street, Tallahassee, Florida 32399-4201**

Each Defendant is required to serve written defense to the Complaint or Petition on Plaintiffs' Attorney, to wit:

> **Carlos L. Santi, Esq.**
> **Property & Casualty Law Group**
> **1825 Ponce de Leon Boulevard #263**
> **Coral Gables, Florida 33134**

**within 20 days after service of this Summons on that Defendant**, exclusive of the day of service, and to file the original of the defenses with the clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED ON _02/06/2024_.

Kevin C. Karnes
As Clerk of Said Court

By: _____
As Deputy Clerk

Court Seal



## IMPORTANT

A Complaint has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy of photocopy of your written response to the "Plaintiff/Plaintiffs' Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notifiicacion, para contestar la demanda adjunta, por escrito, y presentarla ante de esta tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrita, incluyendo el numero del caso y los nombres de las partes, interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, puede perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo deseas, puede usted consultar a un abogado immediatamente.  Si no cononce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la personal denominada abajo como "Plaintiff/Plaintiffs' Attorney".  (Demandante o Abogado del Demandante).

Each defendant is required to serve written defenses to the complaint or petition on Plaintiffs' attorney, to wit:

Plaintiffs' attorney is:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**1825 Ponce de Leon Boulevard #263**
**Coral Gables, Florida 33134**

2/6/2024 3:09 PM FILED LEE COUNTY CLERK OF COURT

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                                          CIVIL ACTION

                                                                        CASE NO: 24-CA-000990
Rodriguez, Pedro  E , atf Rodriguez & Sanchez Family Trust et al     Plaintiff vs General Star
Indemnity Company     Defendant
_____/

## STANDING ORDER IN CIRCUIT CIVIL CASES IN THE TWENTIETH JUDICIAL CIRCUIT

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial
Administration 2.545, and Administrative Order 1.13 (as amended) entered by the Chief Judge of
this Circuit, the parties are ordered to adhere to the following information and procedures
applicable to civil lawsuits:

1. **SERVICE OF THIS ORDER.**  The Plaintiff is directed to serve a copy of this order
with each Summons issued in this case.  One copy of this Order is to be filed with the Clerk of
the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's
fees on copies for each Standing Order issued and attached to the Summons.

2. **CIVIL CASE MANAGEMENT SYSTEM.**  The Supreme Court of Florida has
established guidelines for the prompt processing and resolution of civil cases.  This Court has
adopted a case management system to help meet those guidelines.  In contested cases (other than
residential foreclosures, involuntary commitment of sexually violent predators, Extraordinary
Writs, 90 day Notice of Medical Malpractice Claim, and Administrative Appeals), the parties are
required to participate in the case management system.  The Court will issue a Case Management
Plan after 150 days of the filing of a case in the event the parties have not submitted an Agreed
Case Management Plan that has been approved by the Court.  However, if it becomes necessary
to amend the court-issued Case Management Plan, the parties may submit an Agreed Case
Management Plan, subject to approval by the Court, or if the parties cannot agree on an
Amended Plan, the parties may request a case management conference.  The form of the Agreed
Case Management Plan may be accessed at the Court's website at:
https://www.ca.cjis20.org/Programs/Civil-Case-Management/generalcivil.aspx. If a case
management conference is scheduled, attendance by trial counsel and those parties who are not
represented by counsel is mandatory.  Agreed Case Management Plans are to be submitted
to Lee County Civil Case Management by email in Word format to
LeeCircuitCivilCM@ca.cjis20.org or if no access to email then mailed to Lee County
Civil Case Management 1700 Monroe Street Fort Myers Fl. 33901. DO NOT file with the
Clerk of Court.

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).**  ADR provides parties with an
out-of-court alternative to settling disagreements.  The Court requires the parties to participate in
ADR prior to trial.  Mediation is mandatory unless the parties agree to another form of ADR.
Mediation is a conference at which an independent third party attempts to arrange a settlement

Rev. 7/1/2023

2/6/2024 3:09 PM FILED LEE COUNTY CLERK OF COURT

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                    CIVIL ACTION

between the parties. The Court, at its discretion, may order the case be referred to Non-Binding
Arbitration.  Non-Binding Arbitration is the process in which the court refers a case to a
registered arbitrator, or panel of arbitrators, who will hear evidence and make an award which
may become a final judgment if a Motion for Trial De Novo is not timely filed pursuant to
Fla.R.Civ.P. 1820(h).

    4.  **FAILURE TO PROSECUTE.** The Court will issue a Notice of Intent to Dismiss a
case if there is no record of activity within a ten (10) month period of time.

    5. **RULES OF PROFESSIONALISM.**  The Twentieth Judicial Circuit has adopted
Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for
all counsel practicing within the Circuit and self-represented litigants.  The Court requires that all
familiarize themselves and comply with Administrative Order 2.20.  Administrative Order 2.20
may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

        **DONE AND ORDERED** in Chambers at Fort Myers, Lee County, Florida.

                                            *Michael T. McHugh (electronically signed)*
                                            Administrative Circuit Judge

    ****Original on file in the office of the Circuit Court Administrative Judge, Lee County

IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND
FOR LEE COUNTY, FLORIDA

CASE NO.:

Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust,

Plaintiffs,

v.

General Star Indemnity Company,

Defendant.

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiffs,                                    Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust,  (the  "Plaintiffs"),  hereby  sue  Defendant,
General Star Indemnity Company (the "Insurance Company"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.  This is an action for damages that is more than $50,000.00 exclusive of interest, costs and
attorney's fees.

2.  The Plaintiffs at all times material hereto has resided in LEE COUNTY, Florida.

3.  The Insurance Company is qualified to do business in Florida and has, at all times material
hereto, been conducting business in LEE COUNTY, Florida.

4.  Venue is proper in LEE COUNTY, Florida because the contract, which forms the subject
matter of this lawsuit, was executed in LEE COUNTY, Florida.

5.  All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

## **GENERAL ALLEGATIONS**

6.  At all times material hereto, in consideration of a premium paid by the Plaintiffs, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of IMA410900 (the "Policy"). The Policy is attached hereto as Exhibit A and incorporated into the Complaint by reference herein.

7.  Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the insured property pursuant to the terms of the policy. The damaged property is located at 514 NE 16th Place, Cape Coral, FL 33909 (the "Property").

8.  On or about 09/28/2022, while the Policy was in full force and effect, the Property sustained a covered loss as a result of Hurricane Ian (the "Loss").

9.  The Insurance Company assigned claim number G10067944 to the Loss.

10. Subsequently, the Insurance Company informed the Plaintiffs that although coverage existed, the costs to repair the damaged property did not exceed the deductible. See Exhibit B. After diligent inspection of the Loss, it was obvious that the Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy but which the Insurance Company failed to indemnify for.

11. As a result of the foregoing, the Insurance Company has breached the Policy.

12. The Plaintiffs have suffered and continues to suffer damages resulting from Insurance Company's breach of the Policy.

13. The Plaintiffs have been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Sections 627.428 and/or 626.9373.

**COUNT I**
**BREACH OF CONTRACT**

The Plaintiffs reincorporate paragraphs 1 through 13 as if fully set forth herein.

14. It is undisputed that the Plaintiffs and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Property.

15. The Plaintiffs have paid all premiums due and owing as contemplated by the Policy; thus, fully performing their obligations under the Policy.

16. The Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

17. Furthermore, at all times material hereto, the Plaintiffs have satisfied all post-loss obligations to the best of their ability in accordance with the Policy.

18. In contrast, the Insurance Company has failed to: (i) acknowledge coverage for a portion of the Loss; and/or (ii) pay Plaintiffs a sufficient amount for the loss. As a result of the foregoing, the Insurance Company has breached the Policy.

19. As a direct and proximate result of the Insurance Company's breach of the policy, the Plaintiffs have sustained damages.

WHEREFORE, the Plaintiffs respectfully request that this Court, enter judgment against the Insurance Company for damages, plus pre-judgment interest, court costs and reasonable attorney's fees pursuant to Section 627.428, Florida Statutes.

## **JURY TRIAL DEMAND**

The Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated February 1, 2024

Respectfully submitted,

Property & Casualty Law Group
Counsel for the Plaintiffs
1825 Ponce de Leon Boulevard #263
Coral Gables, Florida 33134
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

## FLORIDA SURPLUS LINE INSURANCE INFORMATION

Insured's Name: Pedro E. Rodriguez & Marioska Sanchez as Co-Trustees of the Rodriguez & Sanchez Family Trus

Policy #: IMA410900

Policy Dates: From: 24-Aug-22     To: 24-Aug-23

Surplus Lines Agent's Name: Albert Geraci

Surplus Lines Agent's Address: 2400 E. Commercial Blvd., Ste. 728, Fort Lauderdale, FL 33308

Surplus Lines Agent's License #: P176271

Producing Agency Name: Power Insurance Agency Inc     Agent Name: VIOLETA KHOURI

Producing Agent's Physical Address: 13911 SW 42nd St., #113  Miami, FL 33175

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

## "SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."

| | | | |
|---|---|---|---|
| Policy Premium: | $5,587.00 | Policy Fee: | $100.00 |
| Inspection Fee: | $150.00 | Service Fee: | $3.50 |
| Tax: | $288.35 | EMPA Surcharge: | $4.00 |

Surplus Lines Agent's Countersignature:

☐ **"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT- OF-POCKET EXPENSES TO YOU."**

**"THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

EXHIBIT A



GENERAL STAR INDEMNITY COMPANY

**COMMERCIAL LINES POLICY**

GSI-04-I620 (1/ 01)

**GeneralStar**

*Beyond Security™*

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>IMA410900 | NAMED INSURED<br>Pedro E.Rodriguez & Marioska Sanchez<br>(See form GSI-04-I625) |
|---|---|

Endorsement No./ Edition Date/ Form Description

**Forms Applicable – INTERLINE**

| | |
|---|---|
| GSI-04-CP00D (03-10) | COMM POLICY DECL |
| GSI-04-I618 (08-06) | COMMON POLICY CONDITIONS |
| GSI-04-I600 (03-10) | SERVICE OF SUIT CLAUSE |
| GSI-04-I604 (01-01) | MINIMUM EARNED PREM |
| GSI-04-I625 (05-04) | NAMED INSURED ENDT |
| IL0255 (03-16) | FL CHANGES-CANCELLATION/NON-RENEWAL |

**Forms Applicable – GENERAL LIABILITY**

| | |
|---|---|
| GSI-04-CGLDEC(05-04) | GENERAL LIABILITY DECL |
| CG0001 (04-13) | GL COVERAGE FORM-OCC |
| GSI-04-C512 (01-01) | CLASSIFICATION LIMITATION |
| GSI-04-C600 (06-21) | CGL COMBINED PROVISIONS ENDT |
| IL0021 (09-08) | NUCLEAR ENERGY LIAB EXCL |
| CG0220 (03-12) | FLORIDA CHANGES – CANCELLATION AND NON RENEWAL |
| CG2144 (04-17) | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECTS |
| CG2173 (01-15) | EXCL OF CERTIFIED ACTS OF TERRORISM |
| CLF 21 0044 (12-21) | TOTAL PFAS EXCLUSION |

**Forms Applicable – PROPERTY**

| | |
|---|---|
| GSI-04-CP03D (05-04) | COMM PROPERTY COV DECL |
| GSI-04-P400 (09-19) | PROPERTY COMBINED PROVISIONS ENDORSEMENT |
| GSI-04-P433 (01-07) | TOTAL LOSS ENDT |
| GSI-04-P487 (09-20) | APPLICATION OF THE DEDUCTIBLE ENDORSEMENT |
| CP0010 (10-12) | BUILDING AND PERS PROP COVG |
| CP0090 (07-88) | COMM PROPERTY CONDITIONS |
| CP0125 (05-22) | FLORIDA CHANGES |
| CP1030 (09-17) | CAUSE OF LOSS-SPECIAL |
| CP1033 (10-12) | THEFT EXCLUSION |
| CP1075 (12-20) | EXCLUSION - CYBER INCIDENT |
| CPR 21 0001 (03-17) | EXCLUSION - PRE-EXISTING DAMAGE |
| CPR 21 0004 (11-19) | EXCLUSION - BIOLOGICAL OR CHEMICAL MATERIALS |
| CPR 21 0005 (11-19) | AMENDMENT OF THE NUCLEAR HAZARD EXCLUSION ENDORSEMENT |
| CPR 21 0006 (11-19) | EXCLUSION - TERRORISM |
| CPR 21 0008 (07-20) | EXCLUSION-VIRUS OR BACTERIA |
| IL 01 0001FL (12-21) | FLORIDA CHANGES – AMENDMENT OF APPRAISAL CONDITION |

## ADDITIONAL FORMS

ORIGINAL

# SCHEDULE OF FORMS AND ENDORSEMENTS (Continued)

Endorsement No./ Edition Date/ Form Description



# GENERAL STAR INDEMNITY COMPANY
**120 LONG RIDGE ROAD**
**PO BOX 10354**
**STAMFORD, CONNECTICUT 06904-2354**
A Stock Insurance Company

## COMMON POLICY DECLARATIONS

POLICY # IMA410900                    RENEWAL OF POLICY # NEW

**1. NAMED INSURED**      Pedro E.Rodriguez & Marioska Sanchez
(See form GSI-04-I625)

MAILING ADDRESS      514 NE 16th Place

Cape Coral, FL 33909

**2. POLICY PERIOD:**      From ____08/24/2022____ to ____08/24/2023____
at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**      PREMIUM

| | |
|---|---|
| Commercial Property Coverage Part | $ 4,313.00 |
| Commercial Inland Marine Coverage Part | $ |
| Commercial General Liability Coverage Part | $ 1,274.00 |
| Equipment Breakdown Coverage | $ |
| Liquor Liability Coverage Part | $ |
| Coverage Part | $ |
| **TOTAL PREMIUM** | $ 5,587.00 |
| STATE SURPLUS TAX ( %) | $ |
| POLICY FEE | $ |
| Broker Fee - RPS | $ 100.00 |
| Inspection Fee | $ 150.00 |
| FL Surplus Lines Tax | $ 288.35 |
| FL Stamping Office Fee | $ 3.50 |
| FL EMPA- Commercial | $ 4.00 |
| | $ |
| **POLICY TOTAL (payable at inception)** | $ 6,132.85 |

To Report a Loss
• Dial toll-free #1 (844)777-8323 or visit our
• Website: https://my.rpsins.com/claimsfnol
• Contact Insurer directly (see policy section)

**4. FORM OF BUSINESS:**
☐ Individual          ☐ Partnership          ☐ Limited Liability Company
☐ Joint Venture      ☒ Organization (Other than Partnership, Joint Venture or Limited Liability Company)

**5. BUSINESS DESCRIPTION:** Office

**6. FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**
See Schedule of Forms & Endorsements GSI-04-FORMSCH (1-01)

THESE COMMON POLICY DECLARATIONS, AND OTHER APPLICABLE COVERAGE PART DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED AT _____ BY: _____
Authorized representative or countersignature, whichever applies.

DATE 08/25/2022                    PRODUCER CODE: 14995

PRODUCER NAME: Risk Placement Services, Inc.

GSI-04-CP00D (3/ 10)                    ORIGINAL

# GENERAL STAR INDEMNITY COMPANY

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium or for the failure to provide to the Company any audit related documentation, for either this insurance policy or any other insurance policy issued to a Named Insured in the past; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums. Failure to pay any premium or to provide to the Company any audit-related documentation, for either this insurance policy or any other insurance policy issued to a Named Insured in the past, will result in a cancellation of this policy; and

2. Will be the payee for any return premiums we pay.

## F. Representations On Application Warranty.

The following representations on application warranty applies to all Coverage Parts attached to this policy.

© Copyright, General Star Management Company, Stamford, CT1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

By accepting this policy, you agree, represent and warrant that:

1. The statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application are:

   (a) Accurate and complete and no facts have been suppressed, omitted or misstated; and

   (b) Material to us, and we have issued this policy in reliance upon them;

2. Any failure to fully disclose the information requested in the application for insurance, whether by omission or suppression, or any misrepresentation in the statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application, renders coverage for any claim(s) null and void and entitles us to rescind the policy from its inception; and

3. The application for this policy is incorporated and made part of the policy by reference.

**G. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

---

IN WITNESS WHEREOF The **General Star Indemnity Company** has caused this Policy to be signed by its President and Secretary at Stamford, Connecticut, but the same shall not be binding upon the Company unless countersigned on the Declarations Page by an authorized representative of the Company.

**GENERAL STAR INDEMNITY COMPANY**

_Secretary_

_President_

© Copyright, General Star Management Company, Stamford, CT 1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of General Star Indemnity Company (the "Insurer") to pay any amount claimed to be due hereunder, the Insurer, at the request of the insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction.  All matters arising hereunder shall be determined in accordance with the law and practice of such Court.  However, nothing in this provision constitutes a waiver of the Insurer's rights to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States of America or of any State in the United States.

It is further agreed that service of process in such suit may be made upon the Insurer by certified mail, return receipt requested, addressed to the Insurer in care of it's **Corporate Secretary**, Attention: Legal Department, General Star Indemnity Company, 120 Long Ridge Road, Stamford, CT  06902-1843.  In any suit instituted under this contract, Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-referenced Corporate Secretary, or his designee, is authorized and directed to accept service of process on behalf of the Insurer in any such suit or upon the request of the insured to give a written undertaking to the insured that it will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or such other insurance department representative, or such other governmental officer, such as the Secretary of State, specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Insurer's Corporate Secretary as the person to whom the said insurance department representative is authorized to mail such process or a true copy thereof.

© Copyright, General Star Management  Company, Stamford, CT1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

## GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM

Item 5. of Condition A Cancellation of the COMMON POLICY CONDITIONS is deleted and replaced by the following:

5.   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata and such refund will be subject to minimum earned premium of _____ 25% of the TOTAL PREMIUM shown under item 3. of the COMMON POLICY DECLARATIONS. The cancellation will be effective even if we have not made or offered a refund.

GSI-04-I604 (1/ 01)          ©Copyright, General Star Management Company, Stamford, CT1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ  IT CAREFULLY.**

## NAMED INSURED  ENDORSMENT

The NAMED  INSURED  Shown on the Common Policy Declarations,  GSI-04-CP00D,  includes the following:

```
Pedro E. Rodriguez & Marioska Sanchez as Co-Trustees of the Rodriguez & Sanchez
Family Trust
```

ALL OTHER TEMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

GSI-04-I625 (5/ 04)            © Copyright, General Star Management Company, Stamford, CT 2004.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

IL 02 55 03 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

**a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**b.** We may not cancel:

**(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

© Insurance Services Office, Inc., 2015

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

**a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(4)** There has been a substantial change in the risk covered by the policy;

**(5)** The cancellation is for all insureds under such policies for a given class of insureds;

**(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(7)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**(8)** The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

**(2)** 45 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above, and this policy does not cover a residential structure or its contents; or

**(b)** Cancellation is based on the reason stated in Paragraph **7.a.(8)** above;

**(3)** 120 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above; and

**(b)** This policy covers a residential structure or its contents.

**c.** If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**D.** The following is added:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

**a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph **D.5.**; or

**b.** 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this policy:

**a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

    **(1)** The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

    **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **D.3.,** we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

**a.** Except as provided in Paragraph **E.1.b.,** we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

**b.** We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** Material misstatement or fraud related to the claim;

    **(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

    **(4)** We have paid the policy limits.

    If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2), b.(3)** or **b.(4),** we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to Paragraph **E.2.,** a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

© Insurance Services Office, Inc., 2015

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**POLICY #** ___IMA410900___

## 1. LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 5,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ 2,000,000 | |
| PRODUCTS/ COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |

## 2. LOCATION(S) OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

| Loc# | Address | City | State Zip | Territory Code |
|---|---|---|---|---|
| 1 | 514 NE 16th Place | Cape Coral | FL 33909 | |

## 3.

| LOC # | CLASSIFICATION | CODE NO. | KEY LTR | PREMIUM BASIS | RATES Prem/Ops | RATES Prod/Comp Ops | ADVANCE PREMIUM Prem/Ops | ADVANCE PREMIUM Prod/Comp Ops |
|---|---|---|---|---|---|---|---|---|
| 1 | Buildings or Premises - bank or office - mercantile or manufacturing (Lessor's risk only) - maintained by the insured - other than Not-For-Profit | 61217 | A | 6,000 | 191.53 | Included | 1,274 MP | Included |
| 1 | Assault & Battery (Included Limit) | 99999 | T | Included | Included | | Included | |

| | | |
|---|---|---|
| **SUBTOTAL** | 1,274 | |
| **TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:** | | |
| **(TRIA COVERAGE NOT APPLICABLE UNLESS PREMIUM SHOWN ABOVE)** | | |
| **TOTAL ADVANCE PREMIUM** | 1,274 | |

Audit period annual unless otherwise stated _____

## 4. FORMS AND ENDORSEMENTS FORMING A PART OF THIS COVERAGE PART AND MADE PART OF THIS POLICY ON ITS EFFECTIVE DATE:

See Schedule of Forms & Endorsements GSI-04-FORMSCH (1-01)

## 5. RETROACTIVE DATE:_____(Applies only to CG 00 02 - Claims Made Commercial General Liability Coverage Form. If blank, Retroactive Date is the inception date of this policy shown under Item 2 POLICY PERIOD of the COMMON POLICY DECLARATIONS)

a.  Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date shown above and Coverage B of this insurance does not apply to "personal and advertising injury" caused by an offense committed before the Retroactive Date shown above.

b.  If applicable, the Retroactive Date for the insurance provided by some endorsements that are attached to and form a part of this Coverage Part may be different from the Retroactive Date shown above. In that case, the Retroactive Date applicable to the insurance provided by such endorsements will be shown in those endorsements.

**THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012
CG   00 01 04 13

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

  **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

    **(1)** On premises you own or rent;

    **(2)** On ways next to premises you own or rent; or

    **(3)** Because of your operations;

    provided that:

      **(a)** The accident takes place in the "coverage territory" and during the policy period;

      **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

      **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    **(1)** First aid administered at the time of an accident;

    **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

    **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

  **a. Any Insured**

    To any insured, except "volunteer workers".

  **b. Hired Person**

    To a person hired to do work for or on behalf of any insured or a tenant of any insured.

  **c. Injury On Normally Occupied Premises**

    To a person injured on that part of premises you own or rent that the person normally occupies.

  **d. Workers' Compensation And Similar Laws**

    To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

  **e. Athletics Activities**

    To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

  **f. Products-Completed Operations Hazard**

    Included within the "products-completed operations hazard".

  **g. Coverage A Exclusions**

    Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

  **a.** All expenses we incur.

  **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

  **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

  **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

  **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

  **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by;

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C;**

  **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A;** and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

© Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

  but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

  **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012 CG   00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CLASSIFICATION LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**

This policy does not apply to any damages for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by any operation or activity that is not described by a CLASSIFICATION shown under item 3. of the Declarations other than operations performed by others hired by you that are in connection with an operation described by a CLASSIFICATION in the Declarations.

©Copyright, General Star Management Company, Stamford, CT 1999-2000.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY COMBINED PROVISIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**TABLE OF CONTENTS OF THIS ENDORSEMENT**

|  |  | Begins on Page |
|---|---|---|
| A. | Automatic Additional Insureds | 1 |
| B. | Deductible Liability | 2 |
| C. | Premium Basis Designation | 3 |
| D. | Exclusions | 3 |
| E. | Premium Audit | 11 |
| F. | No Duty or Responsibility to Send Notice When We Do Not Renew | 12 |
| G. | Definitions | 12 |
| H. | State Amendatory Provisions | 13 |

All of the following numbered paragraphs apply to this policy, unless stated here:

1. **SECTION II – WHO IS AN INSURED**
   The following provisions **4., 5.** and **6.** are added to **SECTION II – WHO IS AN INSURED**

   **AUTOMATIC ADDITIONAL INSURED – VENDORS**

   4. **a.** Any of your vendors located in the United States of America (including its territories and possessions), Puerto Rico and Canada with whom you have agreed in writing in a contract or agreement or received a written request or written insurance specifications, including email or fax requiring you to add as an additional insured on your policy, but only with respect to "bodily injury", "property damage" or "personal or advertising injury" arising out of "your products", which are distributed or sold in the regular course of the vendor's business, covered by this policy.

   **b.** With respect to the insurance afforded these additional insureds, the following exclusions apply:
   **(1)** "Bodily injury", "property damage" or "personal and advertising injury" for which the vendor is obligated to pay damages by reason of the assumption of liability in a written contract or written agreement.  This exclusion does not apply to liability for damages that the vendor would have in the absence of written contract or written agreement;
   **(2)** Any express warranty unauthorized by you;
   **(3)** Any physical or chemical change in the product made intentionally by the vendor;
   **(4)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container.
   **(5)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;
   **(6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**(8)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.  However, this exclusion does not apply to:

  i.  The exceptions contained in Sub-paragraphs **(4)** or **(6)**; or

  ii.  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**c.**  This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**AUTOMATIC ADDITIONAL INSURED – TRADE EVENT**

**5.  a.**  Any person or organization acting as the Trade Sponsor or Organizer and for whom you are participating in a Trade Event or Show when you and such person or organization have agreed in writing in a contract or agreement or received a written request or written insurance specifications, including email or fax requiring that such person(s) or organization(s) be added as an additional insured on your policy.  Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your participation in a Trade Event or Show.

**b.**  With respect to the insurance afforded to these additional insureds, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which takes place after your participation in the Trade Event or Show has ended.

**AUTOMATIC ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE, OR RECEIVER**

**6.  a.**  Any mortgagee, assignee, or receiver whom you have agreed in writing in a contract or agreement to add as an additional insured on your policy, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use by you of your premises which are covered by this policy.

**b.**  With respect to the insurance afforded to these additional insureds, this insurance does not apply to structural alterations, new construction or demolition operations performed by or on behalf of the mortgagee, assignee or receiver.

**2.  DEDUCTIBLE LIABILITY**

| $ | Deductible applied on a Per "Occurrence" or Per Offense Basis<br>($0, unless an amount is shown) |
|---|---|

**a.**  Our obligation, under **SECTION I – COVERAGES** (other than **COVERAGE C MEDICAL PAYMENTS**) to pay damages for which the insured is legally liable, and costs or expenses applies only to the sum of damages, costs or expenses which are in excess of any deductible amount stated above.

**b.**  The deductible amount stated above applies to all damages on a per "occurrence" basis for "bodily injury" or "property damage" or on a per offense basis for "personal and advertising injury", whichever is applicable to the claim under which this coverage is afforded, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

**c.**  The terms of this insurance, including those with respect to:

**(1)**  Our right and duty to defend any "suit" seeking those damages; and

**(2)**  Your duties in the event of an "occurrence", offense, claim or "suit"

apply irrespective of the application of the deductible amount.

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**d.** We may pay any or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**e.** The above deductible amount does not apply to salaries and expenses of our own "employee(s)".

## 3. PREMIUM BASIS DESIGNATION

The Premium Bases shown on the **Declarations Page** and identified by key letter in parentheses applies as follows:

| KEY LETTER | PREMIUM BASE | HOW RATES APPLY |
|---|---|---|
| (a) | Area | Per 1,000 square feet |
| (c) | Total Cost | Per $1,000 of total cost |
| (m) | Admissions | Per 1,000 admissions |
| (p) | Payroll | Per $1,000 of payroll |
| (s) | Gross Sales | Per $1,000 of gross sales |
| (t) | Other | Describe |
| (u) | Units | Per unit (describe) |

These premium bases are as outlined in the Insurance Services Office's Commercial Lines Manual Classification Table and Division Six General Liability Sections unless otherwise indicated in the policy. Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy other than herein stated.

## 4. EXCLUSION - TOTAL POLLUTION

Paragraph **f. Pollution** in Subsection **2. Exclusions** of **SECTION I - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraphs **m. Pollution** and **n. Pollution-Related** in Subsection **2. Exclusions** of **SECTION 1 – COVERAGE B PERSONAL AND ADVERTSISING INJURY LIABILITY** are deleted and replaced by the following:

This policy does not apply to any damages because of "bodily injury", "property damage" or "personal or advertising injury" for which the insured is legally liable, or costs or expenses arising out of, resulting from, caused or contributed to by:

**a.** The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

**c.** Any actual or alleged; breach of duty, negligent act, error or omission, or any insured or of any person for whose acts any insured is legally liable which results in damages, loss, cost or expense as described in Paragraph **a.** or **b.** above.

This exclusion applies whether or not such damages, costs or expenses arise out of, result from are caused or contributed by any "bodily injury", "property damage" or "personal and advertising injury" which may be included within the "products-completed operations hazard".

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**5.   EXCLUSION – EMPLOYER'S LIABILITY – EMPLOYEE, VOLUNTEER WORKER, CASUAL WORKER AND TEMPORARY WORKER**

Paragraph **e. Employer's Liability** in Subsection **2. Exclusions** of **SECTION I - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following:

**e.   Employer's Liability**
"Bodily injury" to:

**(1)  (a)**  Any "employee", "volunteer worker", "casual worker" or "temporary worker" of any insured;
   **(b)**  Any contractor, subcontractor or independent contractor directly or indirectly hired or retained by or for any insured; or
   **(c)**  Any "employee", "volunteer worker", "casual worker" or "temporary worker" of such contractor, subcontractor or independent contractor,

   arising out of and in the course of:

   **(d)**  Employment by any insured; or
   **(e)**  Performing duties related to the conduct of any insured's business; or

**(2)**  The spouse, child, parent, brother, sister, or domestic partner of that:

   **(a)**  "Employee", "volunteer worker", "casual worker" or "temporary worker" of any insured;
   **(b)**  Contractor, subcontractor or independent contractor directly or indirectly hired or retained by or for any insured; or
   **(c)**  "Employee", "volunteer worker", "casual worker" or "temporary worker" of such contractor, subcontractor or independent contractor

   as a consequence of Paragraph **e.(1)** above.

This exclusion applies:

**(3)**  Whether any insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury";

**(4)**  To all claims or "suits" by any person or organization for damages of "bodily injury" including damages for care and loss of services;

**(5)**  To "bodily injury" to any worker whose activities are related to the job(s) or project(s) and the job or project location(s) at which they are performed; or

**(6)**  To any liability assumed by any insured under any contract or agreement,

as a consequence of Paragraph **e.(1)** above.

For the purpose of this exclusion, the following definition is added:

**(1)**  "Casual worker" means:

   **(a)**  A person who acts at the direction of and within the scope of duties determined by any insured, and is retained by any insured for a short time and for a limited and temporary purpose; or
   **(b)**  A person for whom any insured, or a labor leasing firm acting on behalf of any insured, does not withhold federal income taxes and pay federal unemployment tax.

**6.   EXCLUSIONS - INFRINGEMENT OR DILUTION OF INTELLECTUAL PROPERTY RIGHTS OR MISAPPROPRIATION, USE OR DISCLOSURE OF TRADE SECRETS; BREACH OF CONTRACT**

**a.**   The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

This policy does not apply to any damages because of "bodily injury" or "property damage" for which any insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

**(1)** Any alleged or actual infringement or dilution of intellectual property rights, including, but not limited to, copyright, title, slogan, patent, service name, service mark, trade name, trademark, or trade dress;

**(2)** Any alleged or actual misappropriation, use or disclosure of trade secrets;

**(3)** Any alleged or actual unfair competition, plagiarism, piracy, or wrongful appropriation of ideas;

**(4)** Any alleged or actual unfair or otherwise wrongful use of another's written, filmed, broadcast, photographed, taped or recorded material;

**(5)** Any alleged or actual unfair or deceptive trade practice(s); or

**(6)** Any alleged or actual violation of the right of publicity, or wrongful appropriation of name, likeness or persona.

**b.** Paragraph **f. Breach Of Contract** and Paragraph **i. Infringement of Copyright, Patent, Trademark Or Trade Secret** of Subsection **2. Exclusions** in **SECTION I - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** are deleted and replaced by the following:

**f.   Breach of Contract**
"Personal and advertising injury" arising out of, resulting from, caused by, contributed to by, or also constituting a breach of contract.

**i.   Infringement Of Copyright, Patent, Trademark Or Trade Secret**
"Personal and advertising injury" arising out of, resulting from, caused by, contributed to by, or otherwise constituting:

**(1)** Any alleged or actual infringement or dilution of intellectual property rights, including, but not limited to, copyright, title, slogan, patent, service name, service mark, trade name, trademark, or trade dress;

**(2)** Any alleged or actual misappropriation, use or disclosure of trade secrets;

**(3)** Any alleged or actual unfair competition, plagiarism, piracy, or wrongful appropriation of ideas;

**(4)** Any alleged or actual unfair or otherwise wrongful use of another's written, filmed, broadcast, photographed, taped or recorded material;

**(5)** Any alleged or actual unfair or deceptive trade practice(s); or

**(6)** Any alleged or actual violation of the right of publicity, or wrongful appropriation of name, likeness or persona.

## 7.   EXCLUSION - ASBESTOS LIABILITY

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal or advertising injury" for which the insured is legally liable, or costs or expenses, arising directly or indirectly out of, resulting from, caused or contributed to by:

**a.** The use of, sale of, installation of, removal of, abatement of, distribution of, containment of, or exposure to asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

**b.** The actual or threatened abatement, mitigation, removal or disposal of asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph **a.** or **b.** above; or

**d.** Any obligation of the insured to indemnify or contribute with any party in connection with Paragraph **a., b.** or **c.** above.

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

8.  **EXCLUSION - EMPLOYMENT-RELATED PRACTICES LIABILITY**

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to any damages because of "bodily injury" or "personal and advertising injury" to:
**a.** A person arising out of any:
   **(1)** Refusal to employ that person;
   **(2)** Termination of that person's employment; or
   **(3)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Subparagraph **a. (1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

**(a)** Whether the injury-causing event described in Subparagraph **a. (1)**, **(2)** or **(3)** above occurs before employment, during employment or after employment of that person;

**(b)** Whether the insured may be liable as an employer or in any other capacity; and

**(c)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

9.  **EXCLUSION - LEAD**

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal and advertising injury" for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

**a.** The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

**b.** The abatement, mitigation, removal or disposal of lead, lead compounds or materials containing lead;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph **a.** or **b.** above; or

**d.** Any obligation to share damages with or repay anyone else who must pay damages in connection with Paragraph **a.**, **b.** or **c.** above.

10. **EXCLUSION – SILICA**

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal and advertising injury" for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused by or contributed to by, in whole or in part, the actual, alleged, threatened or suspected inhalation of, congestion of, contact with, exposure to existence of, or presence of:

**a.** "Silica", "silica-related dust", exposure to silica or the use of silica;

**b.** Any claim or "suit" by or on behalf of any governmental authority or any other party involving a request, demand, order or statutory or regulatory requirement regarding:
   **(1)** Assessing the presence, absence or amount or effects of "silica" or "silica-related dust";
   **(2)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, neutralizing, treating, detoxifying, remediating, abating, disposing of or mitigating silica; or
   **(3)** Responding to "silica" or "silica-related dust" in any way other than as described in Subparagraphs **b.(1)** and **b.(2)** above;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph **a.** or **b.** above; or

**d.** Any obligation of the insured to indemnify or contribute with any party in connection with Paragraph **a.**, **b.** or **c.** above.

For the purpose of this exclusion, the following definitions are added:

**(a)** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**(b)** "Silica-related dust" means a mixture or combination or silica and other dust or particles.

## 11. EXCLUSION - FUNGUS(ES) AND SPORE(S)

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to damages because of "bodily injury", "property damage" or "personal and advertising injury" for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

**a.** Any "fungus(es)" or "spore(s)";

**b.** Any solid, liquid, vapor, or gas produced by or arising out of any "fungus(es)" or "spore(s)";

**c.** Any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any "fungus(es)" or "spore(s)";

**d.** Any intrusion, leakage, or accumulation of water or any other liquid that contains, harbors, nurtures or acts as a medium for "fungus(es)" or "spore(s)";

**e.** The actual or threatened abatement, mitigation, removal or disposal of "fungus(es)" or "spore(s)" or any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any "fungus(es)" or "spore(s)";

**f.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraph **a., b., c., d.** or **e.** above; or

**g.** Any obligation of the insured to indemnify or contribute with any party in connection with Paragraph **a., b., c., d., e.** or **f.** above.

The above applies regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence to such damages for which the insured is legally liable, or costs or expenses.

This exclusion does not apply to "bodily injury" as the result of the ingestion of goods intended for human consumption.

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

For the purpose of this exclusion, the following definitions are added:

**(a)** "Fungus(es)" includes, but is not limited to, any form or type of mildew, mold, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

**(b)** "Spore(s)" means any reproductive body produced by or arising out of any "fungus(es)".

## 12. EXCLUSION – BISPHENOL A

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to:

**a.** Any damages because of "bodily injury", "property damage" or "personal and advertising injury" for which any insured is legally liable, or costs or expenses, actually or allegedly arising out of, resulting from, caused by or contributed to by bisphenol A or exposure to bisphenol A or the use of bisphenol A;

**b.** Any damages because of "bodily injury", "property damage" or "personal and advertising injury" or any loss, cost or expense arising out of any **(i)** claim or "suit" by or on behalf of any governmental authority or any other alleged responsible party because of, or **(ii)** request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

  **(1)** Assessing the presence, absence, or amount or effects of bisphenol A;
  **(2)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating bisphenol A; or
  **(3)** Responding to bisphenol A in any way other than as described in Subparagraphs **b.(1)** and **(2)** above;

**c.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

**d.** Any obligation to share damages with or repay someone else who must pay damages as described in any of the subsections above.

## 13. EXCLUSION – AIRCRAFT PRODUCTS/GROUNDING

The following exclusion is added to Subsection **2. Exclusions of SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This policy does not apply to any damages because of "bodily injury" or "property damage" for which any insured is legally liable, or loss, costs or expenses, included in the "products-completed operations hazard" and arising out of, resulting from, caused by or contributed to by any "aircraft product" or the "grounding" of any aircraft.

The following definitions are added to the policy:
(1) "Aircraft product" means:
  (a) Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith);
  (b) Any article furnished by you or on your behalf and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment;
  (c) Any of "your product" used at an airport for the purpose of guidance, navigation or direction of aircraft; or
  (d) Training aids, instructions, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.
(2) "Grounding" means:
The withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof sold, handled or distributed by you or on your behalf, or manufactured, assembled or processed by any other person or organization:

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

(a) According to specifications, plans, suggestions, orders, or drawings provided by you or on your behalf; or

(b) With tools, machinery or other equipment furnished to such persons or organizations by you or on your behalf, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

## 14. EXCLUSION – BENZENE AND BENZENE RELATED SUBSTANCES

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to any damages because of "bodily injury", "property damage" or "personal and advertising injury" for which any insured is legally liable, or loss, costs or expenses, arising out of, resulting from caused by or contributed to by:

(1) Benzene or benzene related substances;

(2) Any **(i)** claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or **(ii)** request, demand, order or statutory or regulatory requirement that any insured or any other person or entity is responsible for, or should be responsible for:

  (a) Assessing the presence, absence or amount or effects of benzene or benzene related substances;

  (b) Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating benzene or benzene related substances; or

  (c) Responding to benzene or benzene related substances in any way other than as described in **(2)(a)** and **(2)(b)** above;

(3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

(4) Any obligation to share damages, or loss, costs or expenses, with or repay someone else in connection with any of the subsections above.

As used in this exclusion benzene or benzene related substances means:

(1) Benzene;

(2) Any derivative of benzene including but not limited to toluene; or

(3) Any compound containing benzene including but not limited to xylene.

## 15. EXCLUSION – PHTHALATES

The following exclusion is added to Subsection **2. Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and to Subsection **2. Exclusions** of **SECTION I – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY:**

This policy does not apply to any damages because of "bodily injury", "property damage" or "personal and advertising injury" for which any insured is legally liable, or loss, costs or expenses, arising out of, resulting from caused by or contributed to by:

**(1)** Phthalates, exposure to phthalates or the use phthalates;

**(2)** Any **(i)** claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or **(ii)** request, demand, order or statutory or regulatory requirement that any insured or any other person or entity is responsible for, or should be responsible for:

  **(a)** Assessing the presence, absence or amount or effects of phthalates, exposure to phthalates or the use of phthalates;

  **(b)** Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating phthalates in any way other than as described in **(2)(a)** and **(2)(b)** above;

**(3)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

**(4)** Any obligation to share damages, or loss, costs or expenses, with or repay someone else in connection with any of the subsections above.

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**16. EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY**

    **A.**  Exclusion **2.p.** of **Section I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

      **2. Exclusions**
      This insurance does not apply to:

        **p.**    **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**
            Damages arising out of:

          **(1)**  Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
          **(2)**  The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

          This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

          As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells data processing devices or any other media which are used with electronically controlled equipment.

    **B.**  The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B Personal And Advertising Injury Liability:**

      **2. Exclusions**
      This insurance does not apply to:

      **Access Or Disclosure Of Confidential Or Personal Information**

      "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

      This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**17. EXCLUSION - CROSS SUITS**

    The following exclusion is added to the policy:

    This policy does not apply to any damages or costs or expenses, arising out of, resulting from, caused or contributed to by a claim or "suit" for damages by any named insured against any other named insured.

**18. EXCLUSION PENDING AND PRIOR LITIGATION**

    The following exclusion is added to the policy:

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

This policy does not apply to any claim or "suit" based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any demand made, "suit", complaint, proceeding or investigation pending, or order, decree, settlement or judgment entered, against any insured prior to the effective date of this policy, or any demand made, "suit", complaint, proceeding, or investigation pending, or order, decree, settlement or judgment entered, against any insured alleging, derived from, or in any way involving the same or essentially the same facts, wrongful act or related wrongful acts as alleged in such prior or pending demand, "suit", complaint, proceeding, or investigation.

**19. PREMIUM AUDIT**

Paragraph **5. Premium Audit** in **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted and replaced by the following:

**5.  Premium Audit**

    **a.**  We will compute all premiums for the Coverage Part in accordance with our rules and rates.

    **b.**  The premium stated in the **Declarations Page** for the Coverage Part as advance premium is both a minimum and deposit premium.   At the close of each policy period, we will compute the final earned premium for that period, which will include any interim audit adjustments performed.

        **(1)**  If the computed earned premium exceeds the estimated advance premium paid, the First Named Insured will pay the excess to us.  Audit premium is due and payable upon receipt of our notice by the First Named Insured.

        **(2)**  If the computed earned premium is less than the paid estimated advance premium, then the estimated advance premium will be the minimum premium and final earned premium for the policy period.

    **c.**  The First Named Insured must keep record of the information we need for premium computation and send us copies at such times as we may request.  We reserve the right to examine your books and records relating to the computation of audit premium in accordance with Paragraph **C. Examination Of Your Books And Records** in the **COMMON POLICY CONDITIONS**.

    **d.**  If the policy is written on a flat premium basis, it is not subject to premium audit.

    **e.**  If we verify that operations were performed by contractors or subcontractors you hired, but were not insured or were not adequately insured, we will use the "total cost" of work performed for you by such contractors or subcontractors as if it were payroll to calculate the appropriate premium for the specific classification(s) based on our rates and rules in effect as of the inception date of the policy.  It is your responsibility to pay any additional premium due.

      You will obtain and maintain Certificates of Insurance from all contractors or subcontractors you hire providing evidence of Commercial General Liability insurance, including products/ completed operations insurance.  If you fail to obtain the Certificates of Insurance, then the contractor(s) and/ or subcontractor(s) will be considered inadequately insured and an additional premium will become due.

      A contractor or subcontractor will be considered to be inadequately insured if they maintain Commercial General Liability insurance less than the limits of insurance shown in the Declarations of this policy.

      The "total cost" of work performed means the total cost of all work incurred by the contractor or subcontractor in connection with each specific project, including:

        **(1)**  The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work including the cost of finished equipment installed whether or not furnished by the contractor, subcontractor, or by you; and

        **(2)**  All fees, bonuses or commissions made, paid or due.

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**20. NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW**

Paragraph **9. When We Do Not Renew** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted and replaced by the following:

**9.   When We Do Not Renew**

If we decide not to renew this policy, we have no duty or responsibility to mail or deliver written notice of the non-renewal to any insured.

**20. AMENDMENT OF INSURED CONTRACT DEFINITION**

Paragraph **9.** "Insured contract" of **SECTION V - DEFINITIONS** is deleted and replaced by the following:

**9.**   "Insured contract" means:
   **a.**   A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
   **b.**   A sidetrack agreement;
   **c.**   Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   **d.**   An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   **e.**   An elevator maintenance agreement; or
   **f.**   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.  However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph **f.** does not include that part of any contract or agreement:
      **(1)**   That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
      **(2)**   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
         **(a)**   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
         **(b)**   Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
      **(3)**   Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering  activities.

**22. AMENDMENT OF PERSONAL AND ADVERTISING INJURY DEFINITION**

Paragraph **14.** "Personal and advertising injury" of **SECTION V - DEFINITIONS** is deleted and replaced by the following:

**14.**   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   **a.**   False arrest, detention or imprisonment;
   **b.**   Malicious prosecution;
   **c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   **d.**   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

e.  Oral or written publication, in any manner, of material that violates a person's right of privacy.

## 23.  STATE AMENDATORY PROVISIONS

a.  Louisiana

Paragraph **4.  EXCLUSION - TOTAL POLLUTION** of this endorsement does not apply to any damages for claims made or "suits" brought in the State of Louisiana.

b.  Indiana

With respect to any damages for claims or "suits" brought in the State of Indiana, Paragraph **4. EXCLUSION – TOTAL POLLUTION** of this endorsement is deleted and replaced with the following:

Paragraph **f. Pollution** in Subsection **2. Exclusions** of **SECTION I - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraphs **m. Pollution** and **n. Pollution-Related** in Subsection **2. Exclusions** of **SECTION 1 – COVERAGE B PERSONAL AND ADVERSTISING INJURY LIABILITY** are deleted and replaced by the following:

This policy does not apply to any damages for claims made or "suits" brought in the State of Indiana:

a.  Arising directly or indirectly out of, resulting from, caused by, or contributed to by the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b.  Any loss, cost or expense arising out of any:

   (1)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   (2)  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

   This exclusion applies whether or not such "bodily injury" or "property damage" may be included within the "products-completed operations hazard".

For all claims made or "suits" brought in the State of Indiana, "pollutants" mean any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identified as "pollutants" include, but are not limited to, biological and other etiological agents or materials, genetically engineered materials, teratogenic, carcinogenic and mutagenic materials, diesel, kerosene, and other fuel oils, including "heating oil", gasoline, methyl tertiary-butyl ether (MTBE), ethanol and other gasoline additives, butane, propane, natural gas, and other fuels, brake fluid, transmission fluid, and other hydraulic fluids, ethylene glycol, methanol, ethanol, isopropyl alcohol, and propylene glycol, and other antifreeze additives, grease, tar, petroleum distillates, oil petroleum substances, or derivatives (including any oil refuse or oil mixed with wastes) and other petroleum products, carbon monoxide, and other exhaust gases, Stoddard solvent, mineral spirits, and other solvents, chromium compounds, emulsions/emulsifiers, naphtha, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals, methyl isobutyl ketone (MIBK), methyl ethyl ketone (MEK), n-butyl acetate, 2-butoxyethanol, hexylene glycol (HG), peroxides, Freon, polychlorinated biphenyl (PCB), CFC-113, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides, barium, 1,2-Dichloroethylene, ethylene dichloride (EDC), dichloromethane, methylene chloride, ethylbenzene, lead, Mercury, Selenium, sulfate, xylene, silica, sewage, and industrial waste materials and all substances specifically listed, identified, or described by one or more of the following references: The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, Priority List of Hazardous Substances (1997 and all subsequent revisions), Agency For Toxic Substances And Disease Registry (ATSDR) ToxFAQs™, and/or U.S. Environmental Protection Agency Envirofacts Master Chemical Integrator (EMCI) Chemical References Complete Index.

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Substances identified as examples above or by the referenced lists also include materials or substances to be discarded, recycled, reconditioned or reclaimed.

This definition of "pollutants" applies whether or not such solid, liquid, gaseous, bacterial, fungal, electromagnetic or thermal irritant or contaminant is "your product" or "your products" used by or for you, and/or is an integral part of or incidental to your business or operations or has any function in your business, operations, premises, site, or location.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy other than herein stated.

© Copyright, General Star Management Company, Stamford, CT 2021.
Includes copyrighted material of Insurance Services Office, Inc., with its permission

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

---

 © ISO Properties, Inc., 2007 **IL 00 21 09 08** ☐

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

© Insurance Services Office, Inc., 201 1

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © Insurance Services Office, Inc., 2011 **CG 02 20 03 12**

**POLICY NUMBER:  IMA410900**

COMMERCIAL GENERAL LIABILITY
CG 21 44 04 17

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises: 514 NE 16th Place, Cape Coral FL 33909** |
| **Project Or Operation:** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

© Insurance Services Office, Inc., 2016

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

   © Insurance Services Office, Inc., 2016   CG 21 44 04 17

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V – Extended Reporting Periods.**

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2014

**GENERAL STAR INDEMNITY COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL PFAS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

1. "Bodily injury", "property damage", or "personal and advertising injury" arising out of, in any way related to or which would not have occurred in whole or in part but for the actual, alleged, threatened, or suspected:

   **a.** Inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "PFAS";

   **b.** Design, manufacture, storage, processing, packaging, handling, testing, distribution, sale or disposal of "PFAS";

   **c.** Discharge, dispersal, seepage, migration, release, flaking, leakage, leaching, friability, or escape of "PFAS";

   **d.** Providing or failing to provide warnings or instructions with respect to "PFAS"; or

   **e.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance, toxicity, environmental persistence, presence or absence, or use of "PFAS";

   regardless of whether any other cause, event, materials, substances, compounds, goods, or products (including but not limited to "your product"), contributed concurrently or in any sequence to such injury or damage;

2. Any loss, cost, or expense arising out of or related to any:

   **a.** Request, demand, order or statutory, regulatory or legal requirement of any kind that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess or remediate the effects of "PFAS"; or

   **b.** Claim or suit by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of "PFAS";

3. Any other injury or damage, liability, loss, cost or expense arising out of or in any way related to "PFAS" including, but not limited to, any fines, penalties, punitive or exemplary damages;

4. Any claims against any insured alleging negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others involving the circumstances described in paragraphs **A.1.** through **A.3.** above; or

5. Any obligation of any insured to indemnify or contribute with any party in connection with paragraphs **A.1.** through **A.4.** above.

 Copyright, General Star Management Company, Stamford CT 2021
Includes copyrighted material of Insurance Services Office, Inc. with its permission

## GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This exclusion applies regardless of whether the goods, products (including but not limited to "your product"), materials, compounds or substances that are defined as "PFAS" in paragraph **B.** below are a solid, liquid or gas (including but not limited to dust, smoke, vapor, soot or fumes).

**B.**   The following definition is added to **SECTION V - DEFINITIONS**:

"PFAS" means:

**1.**   any perfluoroalkyl or polyfluoroalkyl substances, including but not limited to: Perfluorooctane sulfonate (PFOS), Perfluorooctanoic acid (PFOA), Perfluorononanoic acid (PFNA), Perfluorodecanoic acid (PFDA), Perfluorobutane sulfonic acid (PFBS), N-Methyl-perfluorooctane sulfonamido acetic acid (Me-PFOSA-AcOH), Perfluorobutanesulfonate, Perfluorohexane sulfonic acid (PFHxS), Potassium Perfluorobutane Suflonate (PFBS), or ammonium perfluorooctanoate (APFO), GenX, including hexafluoropropylene oxide dimer acid (HFPO-DA);

**2.**   any substance that, by whatever name known:

**a.**   has a similar chemical formulary, formation, or structure to any substance listed in paragraph **B.1.** above;

**b.**   is a derivative of or an intended replacement of any substance listed in paragraph **B.1.** above;

**c.**   is an associated homologue, isomer, salt, ester, alcohol, acid, or is a related degradation or by-product, of any substance listed in paragraph **B.1.** above;

**d.**   contains at least one fully fluorinated methyl or methylene carbon atom (without any H/Cl/Br/I atom attached to it); or

**e.**   had been referred to by chemical structure, name or CAS Number, as a known or suspected PFAS, perfluoroalkyl, or polyfluoroalkyl chemical or substance in any foreign or United States federal, state or local statute, law, regulation, rule or written proposed rule, or governmental bulletin (including but not limited to publications of the United States Environmental Protection Agency) that had been published as of the effective date of this insurance; or

**3.**   any goods, products (including but not limited to "your product"), materials, compounds, or substances that actually or allegedly consist of, contain, or are contaminated with any amount of the substances described in paragraphs **B.1.** or **B.2.** above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

**POLICY #**  <u>IMA410900</u>

**1. NAMED INSURED** <u>Pedro E.Rodriguez & Marioska Sanchez</u>   **EFFECTIVE DATE** <u>08/24/2022</u>

<u>(See form GSI-04-I625)</u>

## 2. DESCRIPTION OF PREMISES

| LOC. # | BLDG. # | STREET | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| 1 | 1 | 514 NE 16th Place | Cape Coral | FL | 33909 |

| LOC. # | BLDG. # | CONST | PROTECT CLASS | DIST TO WATER | YEAR BUILT | OCCUPANCY | CLASS CODE |
|---|---|---|---|---|---|---|---|
| 1 | 1 | JM | PC3 | | 2003 | Office | 0702 |

## 3. COVERAGES PROVIDED INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.

| LOC. # | BLDG. # | COVERAGE | LIMIT OF INSURANCE | COVERED CAUSES OF LOSS | COINSURANCE* | RATES | PREMIUM |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Building | 600,000 | Spcl X-theft | 80% | .698 | 4,313 MP |

\* IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

**TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:** _____

**(TRIA COVERAGE NOT APPLICABLE UNLESS PREMIUM SHOWN ABOVE)**

TOTAL PREMIUM:   <u>4,313</u>

## 4. OPTIONAL COVERAGES   APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW.

| LOC. # | BLDG. # | AGREED VALUE EXPIRATION DATE | COVERAGE | AMOUNT | REPLACEMENT COST(X) BUILDING | PERSONAL PROPERTY | INCLUDING "STOCK" |
|---|---|---|---|---|---|---|---|
| 1 | 1 | | | | X | | |

| INFLATION GUARD (Percentage) | | * MONTHLY LIMIT OF | *MAXIMUM PERIOD | *EXTENDED PERIOD |
|---|---|---|---|---|
| BUILDING | PERSONAL PROPERTY | INDEMNITY (Fraction) | OF INDEMNITY (X) | OF INDEMNITY (Days) |

*APPLIES TO BUSINESS INCOME ONLY.

## 5. MORTGAGE HOLDER

LOC. #    BLDG. #    MORTGAGE HOLDER NAME AND MAILING ADDRESS

## 6. DEDUCTIBLE

SEE GSI-04-P487 (09 20    ) APPLICATION OF THE DEDUCTIBLE ENDORSEMENT

## 7. FORMS APPLICABLE

TO ALL COVERAGES:    See Schedule of Forms & Endorsements GSI-04-FORMSCH (1-01)

TO SPECIFIC PREMISES/ COVERAGES:

LOC. #    BLDG. #    COVERAGES                    FORM NUMBER

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMERCIAL PROPERTY COMBINED PROVISIONS ENDORSEMENT

The following amends insurance provided under the policy. Note the specific coverage forms or causes of loss forms affected by the amendatory provisions.

## 1. ELECTRONIC DATA LIMITATION PROVISION

**This ELECTRONIC DATA LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **f. Electronic Data** of subsection **4. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Electronic Data is $250 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**This ELECTRONIC DATA LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **e. Electronic Data** of subsection **4. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Electronic Data is $250 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**This ELECTRONIC DATA LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **d. Interruption of Computer Operations** of subsection **5. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $250 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

This **ELECTRONIC DATA LIMITATION PROVISION** modifies insurance provided under the following when attached to the policy:

BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **e. Interruption of Computer Operations** of subsection **4. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $250 for all loss sustained in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss sustained as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss in a subsequent policy year(s), all loss is deemed to be sustained in the policy year in which the interruption began.

This **ELECTRONIC DATA LIMITATION PROVISION** modifies insurance provided under the following when attached to the policy:

EXTRA EXPENSE COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **c. Interruption of Computer Operations** of subsection **4. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $250 for all loss sustained in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss sustained as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss in a subsequent policy year(s), all loss is deemed to be sustained in the policy year in which the interruption began.

**2.  FUNGUS CLEAN UP AND REMOVAL   LIMITATION PROVISION**

This **FUNGUS CLEAN UP AND REMOVAL LIMITATION PROVISION** modifies insurance provided under the following when attached to the policy:

CAUSES OF LOSS --- BASIC FORM

**SCHEDULE**
**FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT    $5,000**

**A.**  It is agreed that paragraph **h.**, **"Fungus"**, **Wet Rot**, **Dry Rot and Bacteria** of subsection **1.** in section **B. Exclusions** is deleted in its entirety and is replaced with the following:

**h.  "Fungus", "Spore(s)"**, **Wet Rot**, **Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", "spore(s)", wet or dry rot or bacteria.

B.  Section **C. Additional Coverage – Limited Coverage For "Fungus"** , **Wet Rot**, **Dry Rot and Bacteria** is deleted in its entirety and replaced with the following:

© Copyright, General Star Management Company, Stamford, CT, 2019
Contains ISO Copyrighted Materials Used With Their Permission

**C.  Additional Coverage – Limited Coverage For "Fungus" , "Spores", Wet Rot, Dry Rot and Bacteria**

    **1.**  Subject to all other policy provisions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "fungus" or "spores" or any substance, vapor, gas, or byproducts produced by or arising out of any "fungus" or "spores" provided:

        **a.**  Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;

        **b.**  Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and

        **c.**  We authorize you to incur such expense.

    This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

    **2.  a.**  Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all covered expense described in paragraph **C.1.a.** above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE above.

        **b.** Subject to paragraph **2.a.** above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of "fungus" or "spore(s)".

**C.**  The definition of "fungus" in section **E. Definitions** is deleted in its entirety and replaced by the following:

    **1.**  The term "fungus", as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

**D.**  The following paragraph **2.** is added to section **E. Definitions** :

    **2.**  The term "spore(s)", as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any "fungus".

**This FUNGUS CLEAN UP AND REMOVAL LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

CAUSES OF LOSS --- BROAD FORM

**SCHEDULE**
**FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT     $5,000**

**A.**  It is agreed that paragraph **h., "Fungus", Wet Rot, Dry Rot and Bacteria** of subsection **1.** in section **B. Exclusions** is deleted in its entirety and is replaced with the following:

    **h.  "Fungus", "Spore(s)", Wet Rot, Dry Rot And Bacteria**
    Presence, growth, proliferation, spread or any activity of "fungus", "spore(s)", wet or dry rot or bacteria.

© Copyright, General Star Management Company, Stamford, CT, 2019
Contains ISO Copyrighted Materials Used With Their Permission

B.  Section **D. Additional Coverage – Limited Coverage For "Fungus"**, **Wet Rot**, **Dry Rot and Bacteria** is deleted in its entirety and replaced with the following:

**D.  Additional Coverage – Limited Coverage For "Fungus"** , **"Spores"**, **Wet Rot**, **Dry Rot and Bacteria**

   **1.**  Subject to all other policy provisions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "fungus" or "spores" or any substance, vapor, gas, or byproducts produced by or arising out of any "fungus" or "spores" provided:

   **a.**  Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;

   **b.**  Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and

   **c.**  We authorize you to incur such expense.

   This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

   **2.  a.**  Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all covered expense described in paragraph **D.1.a.** above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE of this endorsement.

   **b.** Subject to paragraph **2.a.** above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of "fungus" or "spore(s)".

**C.**  The definition of "fungus" in section **F. Definitions** is deleted in its entirety and replaced by the following:

   **1.**  The term "fungus", as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

**D.**  The following paragraph **2.** is added to section **F. Definitions** :

   **2.**  The term "spore(s)", as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any "fungus".

**This FUNGUS CLEAN UP AND REMOVAL LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

CAUSES OF LOSS --- SPECIAL FORM

**SCHEDULE**
**FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT    $5,000**

**A.**  It is agreed that paragraph **h.**, **"Fungus"**, **Wet Rot**, **Dry Rot and Bacteria** of subsection **1.** in section **B. Exclusions** is deleted in its entirety and is replaced with the following:

   **h.  "Fungus"**, **"Spore(s)"**, **Wet Rot**, **Dry Rot And Bacteria**

   Presence, growth, proliferation, spread or any activity of "fungus", "spore(s)", wet or dry rot or bacteria.

B.  Section **E. Additional Coverage – Limited Coverage For "Fungus"**, **Wet Rot**, **Dry Rot** and **Bacteria** is deleted in its entirety and replaced with the following:

**E.  Additional Coverage – Limited Coverage For "Fungus"** , **"Spores"**, **Wet Rot**, **Dry Rot and Bacteria**

1.  Subject to all other policy provisions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "fungus" or "spores" or any substance, vapor, gas, or byproducts produced by or arising out of any "fungus" or "spores" provided:

   a.  Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;

   b.  Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and

   c.  We authorize you to incur such expense.

   This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2.  a.  Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all covered expense described in paragraph **E.1.a.** above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE of this endorsement.

   b.  Subject to paragraph **2.a.** above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of "fungus" or "spore(s)".

C.  Subsection **1.** of section **G. Definitions** is deleted in its entirety and replaced by the following:

1.  The term "fungus", as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

D.  The following paragraph **3.** is added to section **G. Definitions** :

3.  The term "spore(s)", as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any "fungus".

**3.   ABSOLUTE ASBESTOS  EXCLUSION PROVISION**

**This ABSOLUTE ASBESTOS EXCLUSION PROVISION modifies insurance provided under the following when attached to the policy:**

CAUSES OF LOSS --- BASIC FORM
CAUSES OF LOSS –– BROAD FORM
CAUSES OF LOSS –– SPECIAL FORM

The following is added to the Exclusions section and is therefore not a Covered Cause of Loss:

**Absolute Asbestos Exclusion**

We will not pay for loss or damage caused directly or indirectly by existence of or actual, alleged or threatened, discharge, dispersal, seepage, migration, release or escape of any asbestos, or any materials containing them, at any time.  This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

**4.   NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW**

**This NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW PROVSIION modifies insurance provided under the following when attached to the policy:**

COMMERCIAL PROPERTY CONDITIONS

The following is added to the **Commercial Property Conditions (CP 00 90)**

**J.   NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW**

If we decide not to renew this policy we have no duty or responsibility to mail or deliver written notice of the non-renewal to any insured.

© Copyright, General Star Management Company, Stamford, CT, 2019
Contains ISO Copyrighted Materials Used With Their Permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL LOSS ENDORSEMENT

This endorsement modifies insurance provided under this Policy.

**CAUSES OF LOSS – BASIC FORM**
**CAUSES OF LOSS – BROAD FORM**
**CAUSES OF LOSS – SPECIAL FORM**

In consideration of the premium charged under this policy, it is understood and agreed that in the event of a constructive total loss of the insured property, the full policy premium of the property shall be deemed fully earned for all coverages insured hereunder.  No return premium shall be payable to the insured for the unexpired term of the policy.

All other terms, conditions and exclusions remain the same.

GSI-04-P433 (01/07)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## APPLICATION OF THE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**
**CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM**
**BUILDERS RISK COVERAGE FORM**.

| Schedule* | | | | |
|---|---|---|---|---|
| **Prem. No.** | **Bldg. No.** | **Deductible** | **Covered Cause(s) of Loss**\*\* | **Deductible applies per:** |
| 1 | 1 | $1,000 | (1) | X *Per Occurrence*    *Per Location*        *Per Building*<br><br>*Other*  ----------------------------  *Per Unit* |
| 1 | 1 | 5% | (5) | *Per Occurrence*    *Per Location*    X *Per Building*<br><br>*Other*  ----------------------------  *Per Unit* |
| | | | | *Per Occurrence*    *Per Location*        *Per Building*<br><br>*Other*  ----------------------------  *Per Unit* |
| | | | | *Per Occurrence*    *Per Location*        *Per Building*<br><br>*Other*  ----------------------------  *Per Unit* |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

    **(1)** All Covered Causes of Loss except those with a separate deductible shown in the Schedule
    **(2)** "Hurricane"
    **(3)** Windstorm or Hail except windstorm or hail caused by a "Hurricane"
    **(4)** Theft **(Only applicable for use with the Special Cause of Loss Form)**
    **(5)** Windstorm or Hail
    **(6)** "Named Storm"
    **(7)** Windstorm or Hail except windstorm or hail caused by "Named Storm"
    **(8)** Vandalism
    **(9)** Water damage **(Only applicable for use with the Broad or Special Cause of Loss Form)**
    **(10)** Sprinkler Leakage

**(11)** Ice Damming, thawing of snow, sleet, or ice that damages the interior of any building or structure, or the property inside the building or structure.  **(Only applicable for use with the Special Cause of Loss Form)**

**(12)** Other: _____

Section **D. Deductible** is deleted and replaced with the following:

**D.  Deductible**

1. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following:  Coinsurance Condition or Agreed Value Optional Coverage.

2. The Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by the Covered Cause of Loss shown in the Schedule for that Deductible.  The Deductible applies separately to each occurrence.

3. When property is covered under the Coverage Extension for Newly Acquired Or Constructed Property:  In determining the amount, if any, that we will pay for loss or damage, we will deduct from the value(s) of the property at time of loss.  The applicable deductible is the largest deductible shown in the Schedule for the Covered Cause of Loss for any described premises.

4. When the occurrence involves loss to a specific Covered Property caused by or resulting from a Covered Cause of Loss that is subject to a Sublimit(s) as stated in this Coverage Form, Declarations or in any endorsement to this policy, then any amount of such loss in excess of the applicable Sublimit(s) will not be considered to be part of the covered loss under this policy for purposes of application of any Deductible(s) and, as such, will not be offset, defray, or erode any Deductible(s) provided in this policy.

5. In the event that loss or damage by multiple Covered Causes of Loss occurs to Covered Property as a result of one occurrence, each deductible applicable to the Covered Cause of Loss, as shown in the Schedule above, will apply to that portion of the loss or damage resulting from the Covered Cause of Loss corresponding to each deductible.

6. **Calculation Of The Deductible – Fixed Dollar Amount**

   In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the dollar amount applicable to that Covered Cause of Loss shown in the Schedule above from the loss or damage sustained.

   a. If the deductible applies on a Per Occurrence basis, then the applicable Deductible for that Covered Cause of Loss will be subtracted from the total loss or damage to all Covered Property damaged in that occurrence.  In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

   b. If the deductible applies on a Per Location basis, then the applicable Deductible for that Covered Cause of Loss will be applied separately to each location that sustains loss or damage.

   c. If the deductible applies on a Per Building basis, then the applicable Deductible for that Covered Cause of Loss will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents.

**d.** If the deductible applies on a Per Unit basis, then the applicable Deductible for that Covered Cause of Loss will be applied separately to each unit that sustains loss or damage, regardless of the number of units per building, and their respective contents.

**e.** If the deductible applies on an Other basis, then the applicable Deductible for that Covered Cause of Loss will be applied as described in the schedule above.

**7. Calculation Of The Deductible – Percentage Deductible**

**a. Specific Insurance Other than Builders' Risk**

In determining the amount, if any, that we will pay for loss or damage:

**(1)** If the Deductible applies on a Per occurrence basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all property covered on the policy, including contents, as of the time of loss or damage.

In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, and there is a separate Per Occurrence deductible applicable to each building location, then we will deduct an amount equal to the sum of the applicable Deductible Percentage for each building location (as shown in the Schedule) multiplied by the total value(s) of all property at the building location, including contents, as of the time of the loss or damage.

**(2)** If the Deductible applies on a Per Location basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property at the location that sustained loss or damage.  The deductible will be applied separately to each location that sustains loss or damage, regardless of the number of locations included on the policy, and their respective contents.

**(3)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property in the building that sustained damage.  The deductible will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents.

**(4)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the total value(s) of all Covered Property in the unit that sustained loss or damage, regardless of the number of units per building, and their respective contents.

**(5)** If the Deductible applies on an Other basis, then the applicable Deductible for that Covered Cause of Loss will be applied as described in the Schedule above.

**b. Builders' Risk Insurance**

In determining the amount, if any, that we will pay for property that has sustained loss or damage:

**(1)** If the Deductible applies on a Per Occurrence basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule)

© General Star Management Company, Stamford, CT 2020
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

multiplied by the actual cash value(s) of all property covered by this policy as of the time of loss or damage.

In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, and there is a separate Per Occurrence deductible applicable to each building location, then we will deduct an amount equal to the sum of the applicable Deductible Percentage for each building location (as shown in the Schedule) multiplied by the actual cash value(s) of all property at the building location as of the time of the loss or damage.

**(2)** If the Deductible applies on a Per Location basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the actual cash value(s) of all Covered Property at the location where the loss or damage occurred as of the time of loss or damage.  The deductible will be applied separately to each location that sustains loss or damage, regardless of the number of locations per policy, and their respective contents.

**(3)** If the Deductible applies on a Per Building basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the actual cash value(s) of all Covered Property at the building that sustained loss or damage as of the time of the loss or damage.  The Deductible will be applied separately to each building that sustains loss or damage, regardless of the number of buildings per location, and their respective contents.

**(4)** If the Deductible applies on a Per Unit basis, we will deduct an amount equal to the applicable Deductible Percentage for that Covered Cause of Loss (as shown in the Schedule) multiplied by the actual cash value(s) of all Covered Property at the unit that sustained loss or damage as of the time of the loss or damage.  The Deductible will be applied separately to each unit that sustains loss or damage, regardless of the number of units per building, and their respective contents.

**(5)** If the Deductible applies on an Other basis, then the applicable Deductible will be applied as described in the Schedule above.

8.   Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of any exclusion in this policy.

9.   As used in this endorsement, the term "specific insurance" has the following meanings:  Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance.  Items of insurance corresponding Limit(s) Of Insurance are shown in the Declarations.

10.  The term "hurricane" is defined as any atmospheric disturbance declared to be a hurricane by the U.S. National Weather Service or the National Hurricane Center.

11.  The term "Named Storm" is defined as a weather-related event that has been named, designated or identified by the U.S. National Weather Service or the National Hurricane Center.  It only includes a "hurricane", tropical storm or tropical depression.

All other terms, conditions and exclusions remain unchanged.

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

  **(1)** The lowest basement floor; or

  **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

  **(1)** Are licensed for use on public roads; or

  **(2)** Are operated principally away from the described premises.

  This paragraph does not apply to:

  **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

© Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

   © Insurance Services Office, Inc., 2011

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

 © Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

© Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

    (a) Will end 90 days after the business personal property has been placed in the storage unit;

    (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

 © Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---:|
| Deductible: | $     250 |
| Limit of Insurance – Building 1: | $  60,000 |
| Limit of Insurance – Building 2: | $  80,000 |
| Loss to Building 1: | $  60,100 |
| Loss to Building 2: | $  90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

| | |
|---|---:|
| $  60,100 | |
| −      250 | |
| $  59,850 Loss Payable – Building 1 | |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---:|
| Loss to Building 1: | $  70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $  90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $  60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $  80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

 © Insurance Services Office, Inc., 2011

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | | |
|---|---|---|
| The value of the property is: | | $ 250,000 |
| The Coinsurance percentage for it is: | | 80% |
| The Limit of Insurance for it is: | | $ 100,000 |
| The Deductible is: | | $ 250 |
| The amount of loss is: | | $ 40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ¸ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | | |
|---|---|---|
| The value of the property is: | | $ 250,000 |
| The Coinsurance percentage for it is: | | 80% |
| The Limit of Insurance for it is: | | $ 200,000 |
| The Deductible is: | | $ 250 |
| The amount of loss is: | | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:     The value of the property is:

| | |
|---|---:|
| Building at Location 1: | $  75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $  75,000 |
| | $ 250,000 |
| The Coinsurance percentage for it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $    1,000 |
| The amount of loss is: | |
| Building at Location 2: | $  30,000 |
| Personal Property at Location 2: | $  20,000 |
| | $  50,000 |

Step **(1):** $250,000 x 90% = $225,000

  (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

   **(1)** On or after the effective date of this Optional Coverage; and

   **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

   **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

   **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

   **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If:  The applicable Limit of Insurance is:  $ 100,000

The annual percentage increase is:  8%

The number of days since the beginning of the policy year (or last policy change) is:  146

The amount of increase is:
$100,000 x .08 x 146 ⸱ 365 =  $ 3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

   **(1)** Personal property of others;

   **(2)** Contents of a residence;

   **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

   **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

   Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

   **(1)** Until the lost or damaged property is actually repaired or replaced; and

   **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

   With respect to tenants' improvements and betterments, the following also apply:

   **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

   **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

   **(1)** The Limit of Insurance applicable to the lost or damaged property;

   **(2)** The cost to replace the lost or damaged property with other property:

      **(a)** Of comparable material and quality; and

      **(b)** Used for the same purpose; or

   **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

   If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

 © Insurance Services Office, Inc., 2011

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

**I.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   **a.**  Someone insured by this insurance;

   **b.**  A business firm:

      **(1)**  Owned or controlled by you; or

      **(2)**  That owns or controls you; or

   **c.**  Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

COMMERCIAL PROPERTY
CP 01 25 05 22

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intracoastal Waterway in the counties of:

  **a.** Indian River; and

  **b.** St. Lucie.

**Windstorm Exterior Paint And Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of buildings unless the building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** The **Loss Payment** Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage upon the earliest of the following:

**(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

**(2)** Within 30 days after we receive the sworn proof of loss and:

  **(a)** There is an entry of a final judgment; or

  **(b)** There is a filing of an appraisal award with us; or

**(3)** Within 90 days of receiving notice of an initial, reopened or supplemental claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

Paragraph **(3)** applies only to the following:

  **(a)** A claim under a policy covering residential property;

  **(b)** A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the policy covers only locations in Florida; or

(c) A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the policy covers only locations in Florida.

**E. Sinkhole Collapse Coverage Removed**

Sinkhole Collapse coverage is removed, as indicated in Paragraphs **E.1.** through **E.4.;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **F.**

1. In the Causes Of Loss – Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

2. In the Causes Of Loss – Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage – Collapse; and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

3. In the Causes Of Loss – Special Form, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion.

4. In the Mortgageholders Errors And Omissions Coverage Form, Sinkhole Collapse is deleted from the Covered Causes of Loss under Coverage **B** and from the "specified causes of loss", and is no longer an exception to the Earth Movement Exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

**F.** The following is added to this Coverage Part as a Covered Cause of Loss. In the Causes Of Loss – Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. "Structural damage" to the building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

**G.** The following applies to the **Additional Coverage – Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1. The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2. The Additional Coverage – Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four-week period is replaced by a three-week period.

3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

© Insurance Services Office, Inc., 2021

**H.** The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

**(1)** A claim or reopened claim for loss or damage caused by any peril is barred unless notice of claim is given to us in accordance with the terms of this policy within two years after the date of loss. A reopened claim means a claim that we have previously closed but that has been reopened upon an insured's request for additional costs for loss or damage previously disclosed to us.

A supplemental claim is barred unless notice of the supplemental claim was given to us in accordance with the terms of the policy within three years after the date of loss. A supplemental claim means a claim for additional loss or damage from the same peril which we have previously adjusted or for which costs have been incurred while completing repairs or replacement pursuant to an open claim for which timely notice was previously provided to us.

For claims resulting from hurricanes, tornadoes, windstorms, severe rain or other weather-related events, the date of loss is the date that the hurricane made landfall or the tornado, windstorm, severe rain or other weather-related event is verified by the National Oceanic and Atmospheric Administration.

This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Legal Action Against Us Condition, including any amendment to that condition.

**(2)** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

**I.** The following definition of structural damage is added with respect to the coverage provided under this endorsement:

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following.

**1.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**2.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**3.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**4.** Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**5.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

© Insurance Services Office, Inc., 2021

**COMMERCIAL PROPERTY**
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

© Insurance Services Office, Inc., 2016

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h.** **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    **(1)** You do your best to maintain heat in the building or structure; or

    **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

    This exclusion:

    **(1)** Applies whether or not an act occurs during your normal hours of operation;

    **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

    **(1)** An abrupt falling down or caving in;

    **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

    **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

    But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

    **(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

    **(b)** To collapse caused by one or more of the following:

        **(i)** The "specified causes of loss";

        **(ii)** Breakage of building glass;

        **(iii)** Weight of rain that collects on a roof; or

        **(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

    This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

    **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

    **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

    **d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

    However, this limitation does not apply to:

        **(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

        **(2)** Business Income Coverage or Extra Expense Coverage.

    **e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

    **f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

    **g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

        **(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

        **(2)** Changes in or extremes of temperature;

        **(3)** Disease;

        **(4)** Frost or hail; or

        **(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

    **a.** Animals, and then only if they are killed or their destruction is made necessary.

    **b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

        **(1)** Glass; or

        **(2)** Containers of property held for sale.

    **c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

    However, this limitation does not apply:

        **(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

© Insurance Services Office, Inc., 2016

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

   **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

   **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2016

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

 © Insurance Services Office, Inc., 2016

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

© Insurance Services Office, Inc., 2016

POLICY NUMBER:   IMA410900

**COMMERCIAL PROPERTY**
**CP 10 33 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# THEFT EXCLUSION

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS - SPECIAL FORM

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following is added to the **Exclusions** section:

We will not pay for loss or damage caused by or resulting from theft.

But we will pay for:

**1.** Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or

**2.** Building damage caused by the breaking in or exiting of burglars.

And if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

COMMERCIAL PROPERTY
CP 10 75 12 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including electronic data).

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

**1. Fire Or Explosion**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**2. Additional Coverage**

The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

**a.** Additional Coverage – Electronic Data; or

**b.** Additional Coverage – Interruption Of Computer Operations.

**3. Electronic Commerce Endorsement**

The exclusion in Paragraph **A.** does not apply to the Electronic Commerce (E-Commerce) endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism, if Vandalism coverage is not otherwise excluded under the Standard Property Policy or the Causes Of Loss – Basic, Broad or Special Forms and if applicable to the premises described in the Declarations:

Vandalism does not include a cyber incident as described in Paragraph **A.**

  © Insurance Services Office, Inc., 2020   ☐

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRE-EXISTING DAMAGE

This endorsement modifies insurance provided under the following:

**CAUSE OF LOSS – SPECIAL**
**CAUSE OF LOSS – BROAD**
**CAUSE OF LOSS - BASIC**

### SCHEDULE

| Prem. No. | Bldg. No. | Location |
|-----------|-----------|----------|
| 1 | 1 | 514 NE 16th Place, Cape Coral FL 33909 |

The following is added to B. Exclusions:

This policy excludes any pre-existing property damage as well as any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing damage at the time of loss.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – BIOLOGICAL OR CHEMICAL MATERIALS**

This endorsement modifies insurance provided under the following:

**CAUSES OF LOSS – BASIC FORM**
**CAUSES OF LOSS – BROAD FORM**
**CAUSES OF LOSS – SPECIAL FORM**

The following exclusion is added to Section **B. Exclusions:**

This policy does not provide any coverage for any loss, cost, expense or damage of any nature, however caused, directly or indirectly, arising out of, resulting from, or in any way related to the actual or suspected presence or threat of any pathogenic or poisonous biological or chemical substance or material of any kind, including, but not limited to, any malicious use of such substance or material, whether isolated or widespread, regardless of any other cause or event contributing at the same time or in any sequence.

All other terms, conditions and exclusions remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF THE NUCLEAR HAZARD
## EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CAUSES OF LOSS – BASIC FORM**
**CAUSES OF LOSS – BROAD FORM**
**CAUSES OF LOSS – SPECIAL FORM**

Paragraph **1.d. Nuclear Hazard** of Section **B. Exclusions** is deleted and replaced by the following:

**d.   Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss, cost, expense or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property in the states where required by law.  Such coverage applies only to direct loss or damage by fire to Covered Property.  Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms.

All other terms, conditions and exclusions remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - TERRORISM

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM

**A.** The following exclusion is added to Section **B. Exclusions:**

**EXCLUSION OF TERRORISM**

We will not pay for loss, cost, expense or damage however caused, directly or indirectly, arising out of, resulting from, or in any way related to an actual or threatened act of "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss, cost, expense or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

However, if "terrorism" results in fire, we will pay for the loss, cost, expense or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property in the states where required by law. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms.

**B.** The following definition is added to Section **G. Definitions:**

**1.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   As respects "certified acts of terrorism", if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**2.** "Terrorism" means activities against persons, organizations or property of any nature:

   **a.** That involves the following or preparation for the following:

      **(1)** Use or threat of force or violence; or

      **(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; or

**(4)** Commission or threat of an act of destruction, assassination, kidnapping or hostage-taking; or

**(5)** Commission or threat of a hijacking or any unlawful exercise or control of any mode of transportation, including, but not limited to aircraft, watercraft, truck(s) or automobile(s), including any attempted seizure of control; and

**b.** When one or more of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

As used in this endorsement, "terrorism" includes "certified acts of terrorism".

All other terms, conditions and exclusions remain unchanged.

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - VIRUS, BACTERIA, PARASITE OR OTHER ORGANISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.** The exclusion set forth in this endorsement applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for any loss, damage, claim, cost, expense or other sum, directly or indirectly caused by, arising out of, resulting from or in connection with the actual or suspected presence of any virus (including, but not limited to, SARS-CoV-2), bacterium, parasite or other organism that induces or is capable of inducing physical distress, illness or disease or the fear or threat (whether actual or perceived) of a virus (including, but not limited to, SARS-CoV-2), bacterium, parasite or other organism that induces or is capable of inducing physical distress, illness or disease, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot.  Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** For purposes of this endorsement, loss, damage, claim, cost, expense or other sum, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test:

1. For the presence of any virus, bacterium, parasite or other organism, or

2. Any property insured hereunder that is affected by such virus, bacterium, parasite or other organism.

**D.** With respect to any loss, damage, claim, cost, expense or other sum subject to the exclusion in this endorsement, such exclusion supersedes any exclusion relating to "pollutants".

**E.** The provisions in this Coverage Part and Policy are hereby amended to remove any and all reference to, and coverage provided for, bacteria or bacterium of any kind including, but not limited to, the following:

1. Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria;

2. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria, including any endorsement increasing the scope or amount of coverage; and

3. Any definition of "fungus".

**F.** The terms of this exclusion**,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

All other terms, conditions and exclusions remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – AMENDMENT OF APPRAISAL CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**

The following is added to the Appraisal Condition, if any, and supersedes any other provision to the contrary:

An appraisal will be made only if both we and you agree to it voluntarily.  If so agreed, the appraisal will proceed as otherwise described.

All other terms, conditions and exclusions remain the same.

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

|  |  |
|---|---|
| Insured: | Pedro E. Rodriguez & Marioska Sanchez |
| Property: | 514 NE 16th Place |
|  | Cape Coral, FL 33909 |

|  |  |
|---|---|
| Claim Rep.: | Nelson Conde |
| Position: | General Adjuster |
| Company: | Engle Martin & Associates |

|  |  |
|---|---|
| Estimator: | Nelson Conde |
| Position: | General Adjuster |
| Company: | Engle Martin & Associates |

**Claim Number:** G10067944          **Policy Number:** IMA410900          **Type of Loss:** Hurricane

| | | | |
|---|---|---|---|
| Date Contacted: | 12/16/2022 12:00 AM | | |
| Date of Loss: | 9/28/2022 12:00 AM | Date Received: | 12/16/2022 12:00 AM |
| Date Inspected: | 12/21/2022 12:00 AM | Date Entered: | 12/23/2022 11:22 AM |

|  |  |
|---|---|
| Price List: | FLFM8X_DEC22 |
|  | Restoration/Service/Remodel |
| Estimate: | 1000387087 |

 **IMPORTANT! - PLEASE READ:** This document is an initial estimate ONLY concerning the probable cost of repair of the damage observed during inspection of the claimed loss. Additional inspection and/or investigation of the cause of loss and the damage related thereto may be required before this estimate can be finalized. Please note that this document is NOT a promise or agreement of payment for the claimed loss from Your insurance company or Engle Martin (EM). Instead, this document will be forwarded to Your insurance company for coverage and payment review and decision. This estimate is subject to final review and approval by Your insurance company and is thus subject to further revisions until final written approval is received. All final payment and coverage decisions are made by Your insurance company and NOT by EM. While You await final review and approval by Your insurance company, we request that You present this estimate to Your contractor for its review and comment. In the event of a scope of work or pricing discrepancy between this estimate and Your contractor's estimate, if any, we will work with You and Your contractor to attempt to resolve any such discrepancy; however, the authority to make a final decision on any such discrepancy belongs to Your insurance company, not EM. Finally, please note that You are responsible for selecting and hiring the contractor(s) that You want to perform Your repair work. Neither Your insurance company, nor EM guarantee the work of any contractor, nor do either inspect or monitor the work of any contractor. It is solely Your responsibility to make sure that Your repair work is properly and timely completed.

<span style="color:red">EXHIBIT B</span>



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

**1000387087**

**Roof**

### Roof



| | | |
|---|---|---|
| 7280.00  Surface Area | | 72.80  Number of Squares |
| 384.00  Total Perimeter Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1.  R&R Cap flashing - large | 104.00 LF | 31.54 | 115.33 | 679.10 | 4,074.59 | (990.57) | 3,084.02 |
| **Totals:  Roof** | | | **115.33** | **679.10** | **4,074.59** | **990.57** | **3,084.02** |
| **Total:  Roof** | | | **115.33** | **679.10** | **4,074.59** | **990.57** | **3,084.02** |

### Exterior

#### Stucco

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 2.  R&R Synthetic stucco repair | 40.00 SF | 8.97 | 3.38 | 72.44 | 434.62 | (0.00) | 434.62 |
| Repair stucco around the window on the back left. | | | | | | | |
| 3.  Seal & paint stucco | 1,400.00 SF | 1.70 | 28.21 | 481.64 | 2,889.85 | (240.82) | 2,649.03 |
| Paint facade - East elevation | | | | | | | |
| **Totals:  Stucco** | | | **31.59** | **554.08** | **3,324.47** | **240.82** | **3,083.65** |
| **Total:  Exterior** | | | **31.59** | **554.08** | **3,324.47** | **240.82** | **3,083.65** |

#### Signs

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 4.  R&R Commercial sign - cabinet only - single face | 5.00 SF | 56.60 | 7.48 | 58.10 | 348.58 | (83.66) | 264.92 |
| 5.  R&R Commercial sign face | 5.00 SF | 31.67 | 8.13 | 33.30 | 199.78 | (46.47) | 153.31 |
| **Totals:  Signs** | | | **15.61** | **91.40** | **548.36** | **130.13** | **418.23** |

 **Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### HVAC

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 6.  R&R Central air conditioning system - 3 ton - up to 13 SEER | 1.00 EA | 3,581.07 | 123.85 | 741.00 | 4,445.92 | (698.17) | 3,747.75 |
| 7.  HVAC - General Laborer - per hour | 8.00 HR | 52.50 | 0.00 | 84.00 | 504.00 | (0.00) | 504.00 |
| Allowance for  refrigerant evacuation, fluid recovery charges , and system recharging. | | | | | | | |
| **Totals:  HVAC** | | | **123.85** | **825.00** | **4,949.92** | **698.17** | **4,251.75** |

### Awnings

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 8.  R&R Patio Cover - Fabric replacement | 93.00 SF | 5.98 | 25.93 | 116.40 | 698.47 | (111.95) | 586.52 |
| Includes the square footage to replace cover on 6 awnings | | | | | | | |
| **Totals:  Awnings** | | | **25.93** | **116.40** | **698.47** | **111.95** | **586.52** |

### Windows

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 9.  R&R Aluminum window, picture/fixed 12-23 sf | 1.00 EA | 311.73 | 11.76 | 64.72 | 388.21 | (57.72) | 330.49 |
| **Totals:  Windows** | | | **11.76** | **64.72** | **388.21** | **57.72** | **330.49** |

### General

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 10.  Boom or spider lift - 30'-45' reach (per day) | 4.00 DA | 430.00 | 0.00 | 344.00 | 2,064.00 | (0.00) | 2,064.00 |
| Allowance to paint facade and replace sign cabinet | | | | | | | |
| 11.  Dumpster load - Approx. 12 yards, 1-3 tons of debris | 1.00 EA | 534.00 | 0.00 | 106.80 | 640.80 | (0.00) | 640.80 |
| **Totals:  General** | | | **0.00** | **450.80** | **2,704.80** | **0.00** | **2,704.80** |

**Labor Minimums Applied**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

**CONTINUED - Labor Minimums Applied**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 12.  Electrical labor minimum | 1.00 EA | 185.40 | 0.00 | 37.08 | 222.48 | (0.00) | 222.48 |
| 13.  Misc. Equipment - Commercial labor min | 1.00 EA | 185.41 | 0.00 | 37.08 | 222.49 | (0.00) | 222.49 |
| 14.  Awning labor minimum | 1.00 EA | 41.59 | 0.00 | 8.32 | 49.91 | (0.00) | 49.91 |
| 15.  Window labor minimum | 1.00 EA | 131.90 | 0.00 | 26.38 | 158.28 | (0.00) | 158.28 |
| **Totals: Labor Minimums Applied** | | | **0.00** | **108.86** | **653.16** | **0.00** | **653.16** |
| **Line Item Totals: 1000387087** | | | **324.07** | **2,890.36** | **17,341.98** | **2,229.36** | **15,112.62** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 766.61 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 7,280.00 | Surface Area | 72.80 | Number of Squares | 384.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Summary for Location 1 - Building 1

| | | |
|---|---|---:|
| Line Item Total | | 14,127.55 |
| Material Sales Tax | | 324.07 |
| | | |
| Subtotal | | 14,451.62 |
| Overhead | | 1,445.18 |
| Profit | | 1,445.18 |
| | | |
| **Replacement Cost Value** | | **$17,341.98** |
| Less Depreciation | | (2,229.36) |
| | | |
| **Actual Cash Value** | | **$15,112.62** |
| Less Deductible | [Full Deductible = 30,000.00] | (15,112.62) |
| | | |
| **Net Claim** | | **$0.00** |
| | | |
| Total Depreciation | | 2,229.36 |
| Less Residual Deductible | [Full Residual Deductible = 14,887.38] | (2,229.36) |
| | | |
| Total Recoverable Depreciation | | 0.00 |
| | | |
| **Net Claim if Depreciation is Recovered** | | **$0.00** |

_____

Nelson Conde
General Adjuster



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (6.5%) | Cleaning Mat Tax (6.5%) | Total Cleaning Tax (6.5%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (6.5%) |
|---|---|---|---|---|---|---|---|---|
| **Line Items** | | | | | | | | |
| | 1,445.18 | 1,445.18 | 324.07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total** | | | | | | | | |
| | **1,445.18** | **1,445.18** | **324.07** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

## Recap by Room

**Estimate: 1000387087**

**Area: Roof**

| | | |
|---|---|---|
| **Roof** | **3,280.16** | **23.22%** |
| **Area Subtotal:  Roof** | **3,280.16** | **23.22%** |

**Area: Exterior**

| | | |
|---|---|---|
| **Stucco** | **2,738.80** | **19.39%** |
| **Area Subtotal:  Exterior** | **2,738.80** | **19.39%** |
| **Signs** | **441.35** | **3.12%** |
| **HVAC** | **4,001.07** | **28.32%** |
| **Awnings** | **556.14** | **3.94%** |
| **Windows** | **311.73** | **2.21%** |
| **General** | **2,254.00** | **15.95%** |
| **Labor Minimums Applied** | **544.30** | **3.85%** |
| **Subtotal of Areas** | **14,127.55** | **100.00%** |
| **Total** | **14,127.55** | **100.00%** |



**Engle Martin**

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

### Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---:|---:|---:|
| **AWNINGS & PATIO COVERS** | 575.41 | 106.76 | 468.65 |
| **GENERAL DEMOLITION** | 968.47 | | 968.47 |
| **ELECTRICAL** | 185.40 | | 185.40 |
| **MISC. EQUIPMENT - COMMERCIAL** | 603.56 | 125.45 | 478.11 |
| **HEAVY EQUIPMENT** | 1,720.00 | | 1,720.00 |
| **HEAT,  VENT & AIR CONDITIONING** | 3,787.00 | 673.40 | 3,113.60 |
| **PAINTING** | 2,380.00 | 238.00 | 2,142.00 |
| **ROOFING** | 3,186.56 | 955.97 | 2,230.59 |
| **STUCCO & EXTERIOR PLASTER** | 312.40 | | 312.40 |
| **WINDOWS - ALUMINUM** | 276.85 | 55.37 | 221.48 |
| **WINDOWS - WOOD** | 131.90 | | 131.90 |
| **O&P Items Subtotal** | 14,127.55 | 2,154.95 | 11,972.60 |
| **Material Sales Tax** | 324.07 | 74.41 | 249.66 |
| **Overhead** | 1,445.18 | | 1,445.18 |
| **Profit** | 1,445.18 | | 1,445.18 |
| **Total** | 17,341.98 | 2,229.36 | 15,112.62 |



Roof

Page: 9

4/21/2023

1000387087

Roof

Case 2:24-cv-00219-JLB-NPM   Document 1-1   Filed 03/08/24   Page 127 of 149 PageID 134

IN THE CIRCUIT COURT FOR
THE 20TH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY,
FLORIDA

CASE NO.:

Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust
and ,

Plaintiffs,

v.

General Star Indemnity Company,

Defendant.

### PLAINTIFFS' NOTICE OF SERVING FIRST SET OF INTERROGATORIES

Plaintiffs,                                             Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust and , pursuant to the applicable rule of the
Florida Rules of Civil Procedure, propound the following First Set of Interrogatories upon
Defendant, General Star Indemnity Company (the "Insurance Company"), to be answered
in writing, under oath, within the time specified.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail
to: General Star Indemnity Company c/o The Florida Chief Financial Officer as RA, 200 E.
Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured(s)
1825 Ponce de Leon Boulevard #263
Coral Gables, Florida 33134
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

IN THE CIRCUIT COURT FOR
THE 20TH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY,
FLORIDA

CASE NO.:

Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust
and ,

Plaintiffs,

v.

General Star Indemnity Company,

Defendant.

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Plaintiffs,                                     Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust and , pursuant to the applicable rule of the
Florida Rules of Civil Procedure, propound the following First Set of Interrogatories upon
Defendant, General Star Indemnity Company (the "Insurance Company"), to be answered
in writing, under oath, within the time specified.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S.
mail to: General Star Indemnity Company c/o The Florida Chief Financial Officer as RA,
200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured(s)
1825 Ponce de Leon Boulevard #263
Coral Gables, Florida 33134
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

<u>DEFINITIONS AND INSTRUCTIONS</u>

1.      Insert your answers in the space provided following each question. If additional space is needed, so indicate in the space provided, prepare your answers on a separate paper, and attach the additional paper to your answers.

2.      Separately answer each interrogatory, and each subsection of each interrogatory. The term "you" and "your" means the party or parties to which this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

3.      The terms "Insurance Company" or "Defendant" means the defendant in this action to which these Interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on their behalf. The terms "Insurance Company" or "Defendant" also includes the party's divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and accountants as well as each partnership in which it is a partner, and includes any other person, acting or purporting to act on its behalf.

4.      The terms "you" and "your" mean the party or parties to which these interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on its behalf.

5.      The "Complaint" means the Complaint filed by the Insured in this action.

6.      The term "Claim" means any statement, concept, assertion, idea, allegation, fact, law, upon which  Plaintiff demands that he/she has suffered damages, or has a right to payment, as the result of any act or omission of Defendant.

7.      The terms "person" or "persons" mean any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

8.      The term "contract" means the insurance contract between the parties.

9.      The term "communication" means any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

10.     The term "document" means and includes any kind of written, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and

output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

11.     The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

13.     The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

14.     The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

15.     The term "locate" or "location" means to state the present whereabouts of each Document and to identify the persons having possession, custody or control thereof

16.     The term "to date" shall mean the date on which you answer these interrogatories.

18.     The term "including" means "including but not limited to".

19.        "Relating to" or "relevant to" means embodying, pertaining to, concerning, involving, constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any logical or factual connection whatever with the subject matter in question.

20.     The term "Identify," when used with reference to a natural person, means state:

(a)     his full name and address (or, if the present address is not known, his last known address).

(b)     the full name and address of each of his employers, each corporation of which he is an officer or director and each business in which he is a principal.

(c)     his present (or, if the present is not known, his last known) position and his position or positions at the time of the act to which the interrogatory answer relate, and

(d)     such other information sufficient to enable Plaintiff to identify the person.

21.     "Identify," when used with reference to any entity other than a natural person,

means:

(a)     state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization.

22.     "Identify," when used with reference to a document or written communication,

means state:

(a)     its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum, chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

(b)     the identity of each signer to the document or communication;

(c)     the title or heading of the document or communication;

(d)     its substance;

(e)     its present (or, if the present is not known, the last known) location and custodian.

(f)     the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (I) respondent and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of such document or communication and each copy thereof;

(g)     the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

23.             "Identify," when used with reference to an oral transaction or oral communication, means state:

(a)     its nature (e.g., telephone call, conversation in person, etc.)

(b)     the date and place thereof.

(c)     the identity and address of each person participating therein, present during or witness to any part thereof.

(d)     identify each document in which such transaction or communication was recorded, described or referred to.

24. "Identify," when used in any other context that is herein above set forth, means to describe the act, word, situation, event, etc. (and/or conduct, course of action of any nature whatsoever, including without limitation any failure to act, to engage in any conduct or to pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

25. You may, in lieu of identifying any Document or written communication, attach a true copy of each Document as an exhibit to the answers to these interrogatories, On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

26. Identify each Document produced pursuant to an interrogatory by the paragraph number of the interrogatory in response to which it is produced and by the file from which the document

was produced.

27.     If any of the information furnished in an answer to all or part of an interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

28.     If the answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under oath, within ten days from the time the entire answer becomes known or available to you, but. in no event less than five days prior to trial.

29.     If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

    (a)    set forth all such information that is available to you without undertaking what you contend to be an unreasonable burden;

    (b)    state with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonably burdensome; and

    (c)    describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person.

<u>INTERROGATORIES</u>

       1.        Please state the name, title, current business address, and phone number of all persons answering or assisting with the answering of this set of interrogatories.

       2.        Please state the date that the Insurance Company first received notice from the Insureds for a claim of benefits under the Policy for property damages as described in the Complaint in this lawsuit and how that noticed was received.

3. In reference to the Insurance Company's coverage determination of the Insureds' claim for
benefits under the Policy, please state:

      a.      The date the coverage determination was made.

      b.      Identify each person who participated in the coverage determination.

      c.      Describe each and every fact upon which you relied in forming the
basis for your coverage determination.

      d.      Identify each document sent by the Insurance Company to the Insureds
detailing the reasons for the coverage determination.

e.      State the location, including, page(s), line(s) and paragraph number(s), and the exact language contained in the Policy, which you used to base your coverage determination.

4.      Identify each person, by name, address, phone number and position, whom on behalf of the Insurance Company, inspected the Insured Property in reference to the claim for benefits under the Policy, including his or her field of expertise and the date of each inspection.

5.      Identify each written estimate for repair or replacement, including the amount set forth in each estimate, which has been provided to the Insurance Company in reference to the Insureds' claim for benefits under the Policy.

6.      Identify all persons (other than the Insurance Company) believed or known by you, your agents or attorneys to have knowledge concerning any of the issues raised by the pleadings, specifying the subject matter about which witnesses have knowledge and state whether you have obtained any statements (oral, written or recorded) from any of said witnesses, list the dates any such witness statements were taken, by whom any such witness were taken and who has the present possession, custody and control of any such statements.

7.      Identify all persons who, on the Insurance Company's behalf, have in any way participated in the investigation, evaluation, adjusting or handling of the claim involved hereto. Please specify the nature of the participation for each and every such person and give the time period during which they participated.

8..      Please describe all requests made by the Insurance Company upon the Insureds, (i.e., requests for examination under oath, information, documents, sworn proofs of loss, etc.,) in reference to this claim and the dates made.

9.      With reference to each of your affirmative defenses raised in the lawsuit, please describe each and every fact upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

IN WITNESS WHEREOF, the Insurance Company has executed the foregoing answers to interrogatories and states that same are true and correct to the best of the undersigned's knowledge and belief.

_____
General Star Indemnity Company

By: _____

Title: _____

STATE OF FLORIDA                    }

COUNTY OF _____             }

BEFORE ME, the undersigned authority, personally appeared, _____, who is personally known to me or who has produced as identification, being first duly sworn according to law, deposes and says that he executed the foregoing Answers to Plaintiff's First Set of Interrogatories and that they are true and correct to the best of his/her knowledge and belief.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of

my office; in the County and State last aforesaid, this_____day of _____ ,202_.

_____
Notary Public

My Commission Expires:

Case 2:24-cv-00219-JLB-NPM   Document 1-1   Filed 03/08/24   Page 142 of 149 PageID 149

IN THE CIRCUIT COURT FOR
THE 20TH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY,
FLORIDA

CASE NO.:

Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust
and ,

Plaintiffs,

v.

General Star Indemnity Company,

Defendant.

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION

Plaintiffs,                                    Pedro E. Rodriguez & Marioska Sanchez Co-
Trustees for the Rodriguez & Sanchez Family Trust and , (the "Insured"), pursuant to Rule 1.350
of the Florida Rules of Civil Procedure, hereby request that Defendant, General Star Indemnity
Company (the "Insurance Company"), make available for inspection and duplication, in response
to each numbered paragraph, all documents specified herein which are in its possession, custody
or control or in the possession, custody or control of its agents, accountants or attorneys.
Defendant is requested to make such production within the time period prescribed either by the
Florida Rules of Civil Procedure or by order of the Court.

## I.        DEFINITIONS AND INSTRUCTIONS

1.  The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company "
means the party or parties to which this request is addressed, and any agents, representatives,
attorneys or other persons acting or purporting to act, on its behalf.

2.  The term "person" means any natural person, individual, proprietorship, partnership,
corporation, association, organization, joint venture, firm, other business enterprise, governmental

body, group of natural persons, or other entity.

3.   The "Complaint" means the Complaint filed by the Insured in this action.

4.   The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

5.   The term "all documents" means every document or group of documents *as* above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.   The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.   The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.   As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.   The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The terms "each" and "every" means "each and every," the term "including" means "including without limitation.

10. The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

11. The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12. The term "to date" shall mean the date on which you respond to this request.

13. When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14. When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

15. In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16. The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

17. If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

18. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

    (a)    furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

    (b)    state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

    (c)    describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

19. Unless otherwise indicated, all requests include the time period from the date of the Loss to the date you receive this request.

20. The term "Insured" shall refer to the Petitioner(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.    LOST/DESTROYED DOCUMENTS

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

## III.    DOCUMENTS REQUESTED

1.    A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insureds, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.    Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

3.    Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans to visit the Property on behalf of Insurance Company.

4.      Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insureds' loss as described in the Complaint.

5.      Any and all correspondence or written communications from the Insureds, or their representatives to the Insurance Company which in any manner pertains to the Insureds' loss as described in the Complaint.

6.      Any and all photographs taken by the Insurance Company of the Property.

7.      All documents containing information regarding any statement by the Insureds at any time during the Insurance Company's handling of the Insureds' loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings, Examination Under Oath transcripts, and any other transcripts or written statements from the Insureds. If you claim privilege over any of these documents, please provide redacted documents showing only any statement by the Insureds at any time during the Insurance Company's handling of the Insureds' loss.

8.      Any and all bills or estimates for repairs to the Property submitted to the Insurance Company.

9.      Any and all checks paid to, or on behalf of the Insureds, representing insurance coverage payment(s) for the loss.

10.     All reports which in any manner pertain to the Insureds' loss, including reports by any expert retained by the insurance company.

11.     All Proof of Loss forms pertaining to the subject loss that were sent or received by you or your representatives to or from the Insureds or the Insureds' representative.

12.     All inspection reports or other documents that evidence the cause of the damages at issue in the subject claim as determined by you or your representative.

13.     All applications for insurance submitted by or on behalf of the Insureds to you or your representatives in connection with obtaining or renewing the subject Policy.

14.     All photographs or videos taken by you or your representative(s) in connection with the initial issuance or renewal of the subject Policy.

15.     The complete underwriting file for the Insured.

16.     A current curriculum vitae (CV) or resume for each person retained on your behalf for the purpose of rendering an opinion as to the cause or extent of the subject damage.

17.     All affidavits or sworn statements in your possession pertaining to the subject loss.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: General Star Indemnity Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured(s)
1825 Ponce de Leon Boulevard #263
Coral Gables, Florida 33134
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529